1  SEYFARTH SHAW LLP
   Mark P. Grajski (State Bar No. 178050)
2  Lindsay S. Fitch (State Bar No. 238227)
   400 Capitol Mall, Suite 2350
3  Sacramento, California 95814-4428
   Telephone: (916) 448-0159
4  Facsimile: (916) 558-4839

5  Attorneys for Defendant
   COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT

| JOSE ISMAEL RIVERA | ) Case No. C 08-02202 CW |
|---|---|
| Plaintiff, | ) **DEFENDANT'S OPPOSITION TO** |
| vs. | ) **PLAINTIFF'S MOTION TO REMAND** |
| COSTCO WHOLESALE CORPORATION | ) |
| Defendant. | ) |

# TABLE OF CONTENTS

|   | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. BACKGROUND | 1 |
|     A. THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT | 1 |
|     B. PROCEDURAL HISTORY | 2 |
| III. ARGUMENT | 3 |
|     A. LEGAL STANDARDS FOR DETERMINING AMOUNT IN CONTROVERSY | 3 |
|     B. THE AMOUNT IN CONTROVERSY IN THE PRESENT CASE EXCEEDS $75,000 | 4 |
|         1. A Sufficient Amount In Controversy Is Apparent On The Face Of The Complaint | 4 |
|         2. Plaintiff's Alleged Lost Income Damages Alone Exceeds the Jurisdictional Amount | 5 |
|         3. Jury Verdicts In Comparable Cases Establish That More Than $75,000 Is In Controversy | 6 |
|             i. Emotional Distress And Punitive Damages | 6 |
|             iii. Attorneys' Fees | 10 |
|         4. Defendant Has Offered Sufficient Evidence That The Amount Claimed By Plaintiff Exceeds The Jurisdictional Limit | 11 |
|         5. Plaintiff Has Failed To Make A Binding Representation That He Seeks Less Than $75,000, In Order To Justify Remand | 12 |
|     C. EVEN IF PLAINTIFF'S MOTION IS GRANTED PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS | 14 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Columbia ("ANPAC") v. Dow Quimica ce Colombia S.A.*,
988 F.2d 559 (5th Cir. 1993) .................................................................................... 4, 12

*Bassel v. 4Access Comms. Co.*,
2008 U.S. Dist. LEXIS 41012 (S.D. Cal. 2008) ................................................................ 4

*Bell v. Preferred Life Assurance Society*,
320 U.S. 328 (1943) ........................................................................................................ 11, 12

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992) ........................................................................................... 11

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001) ............................................................................................. 6

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ......................................................................................... 3, 10

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) ................................................................................ 3

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) .............................................................................. 3

*Luckett v. Delta Airlines, Inc.*,
171 F.3d 295 (5th Cir. 1999) ............................................................................................. 5

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) ......................................................................................................... 14

*Piazza v. EMPI*,
2008 U.S. Dist. LEXIS 28136 (E.D. Cal. 2008) ................................................................. 4

*Richmond v. Allstate Ins. Co.*,
897 F. Supp. 447 (S.D. Cal. 1995) ................................................................................ 7, 13

*Romo v. FFG Ins. Co.*,
397 F. Supp. 1237 (C.D. 2005) .......................................................................................... 6

*Sanchez v. Monumental Life Ins. Co.*,
102 F.3d 398 (9th Cir. 1996) ............................................................................................. 3

*Simmons v. PCR Tech.*,
209 F. Supp. 2d 1029 (N.D. Cal. 2002) .............................................................. 4, 6, 7, 10

*Singer v. State Farm Mut. Auto. Ins. Co.*,
116 F.3d 373 (9th Cir. 1997) ............................................................................................. 3

*State Farm Mut. Auto Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ...................................................................................................... 6

*Swinton v. Potomac*,
   270 F.3d 794 (9th Cir. 2001) ......................................................................................... 9

**STATE CASES**

*Holmes v. General Dynamics Corp.*,
   17 Cal. App. 4th 1418 (1993) ....................................................................................... 9

*Maxwell v. Beverly Enterprises*,
   64 Cal. App. 4th 231 (1998) ......................................................................................... 9

*O'Hara v. Storer Comms., Inc.*,
   231 Cal. App. 3d 1101 (1991) ...................................................................................... 2

*Parish v. Peters*,
   1 Cal. App. 4th 202 (1991) ........................................................................................... 2

*Rosenor v. Sears, Roebuck & Co.*,
   110 Cal. App. 3d 740 (1980) ........................................................................................ 6

*Schwab v. Rondel Homes*,
   53 Cal. 3d 428 (1991) ................................................................................................... 2

*Tameny v. Atlantic Richfield Co.*,
   27 Cal. 3d 167 (1980) ................................................................................................... 6

*White v. Ultramar, Inc.*,
   21 Cal. 4th 563 (1999) .................................................................................................. 9

**DOCKETED CASES**

*Daniels v. CVS*,
   San Francisco Superior Court, Case No. SF0342755 .................................................. 8

*Kolas v. Access Business Group LLP*,
   Los Angeles Superior Court No. BC362432 ................................................................ 7

*Lima v. City of Los Angeles*,
   Los Angeles Superior Court No. BC353261 ................................................................ 8

*Lopez v. Bimbo Bakeries USA Inc.*,
   San Francisco Superior Court Case No. CGC05445104 ............................................. 7

*Velez v. Roche, U.S. District Court*,
   for the Northern District of California Case No. 02-00337 .......................................... 9

*Wysinger v. Automobile Club of Southern California*,
   Santa Barbara Superior Court Case No. 1132996 ........................................................ 8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**FEDERAL STATUTES**

28 U.S.C. § 1441 (a) ..........................................................................................................3

28 U.S.C. § 1447 (c) ........................................................................................................14

**STATE STATUTES**

California Code of Civil Procedure section 425.11 ..........................................................2

Cal. Govt. Code §12965 .............................................................................................10, 11

Cal. Govt. Code §12989.2(a) ............................................................................................6

**MISCELLANEOUS**

California Practice Guide, *Federal Civil Procedure Before Trial* ¶ 2:664a.....................5

## I.

## INTRODUCTION

Plaintiff Jose Ismael Rivera filed this action originally in state court, claiming that defendant Costco Wholesale Corporation discriminated against him on the basis of disability, failed to accommodate his disability and wrongfully terminated his employment in retaliation for allegedly making a request for accommodation. Defendant timely removed the case to this Court on the basis of diversity of citizenship. Plaintiff now moves to remand the case on the sole ground that the jurisdictional minimum amount in controversy has allegedly not been established. Significantly, plaintiff offers no representation that the amount in controversy does not exceed $75,000.

As outlined below, plaintiff's claim for lost income damages alone totals approximately $52,000. A review of jury verdicts in comparable cases reveals that punitive damage awards routinely exceed $100,000, and that emotional distress damage awards are substantial. In addition, plaintiff seeks attorney's fees in this action which will easily increase the amount in controversy well beyond the $75,000, jurisdictional minimum. Plaintiff does not allege otherwise, and the motion to remand should be denied.

## II.

## BACKGROUND

### A. THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

According to the Complaint, defendant hired plaintiff as a stocker in the San Francisco Warehouse on or about March 2003. (Complaint ¶ 9.) Plaintiff claims that on or about November 11, 2006 he suffered an injury to his lower back while carrying boxes of milk. (*Id.* ¶ 10.) He also claims that he notified management about his injury and his need to see a doctor. (*Id.* ¶ 11.) Plaintiff further alleges that his employment was terminated on December 2, 2006, for allegedly pretextual reasons. (*Id.* ¶ 14.)

The Complaint attempts to state seven causes of action for (1) violation of the California Family Rights Act; (2) discrimination on the basis of disability; (3) failure to accommodate; (4)

1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

SCI 17093848.1

retaliation; (5) wrongful termination in violation of public policy for exercising FEHA rights; (6) wrongful termination in violation of public policy (Labor Code 132(a)); and (7) intentional infliction of emotional distress. The gist of each claim is that plaintiff was terminated in retaliation for asserting his right to accommodation for his alleged injury.

Plaintiff contends that defendant's alleged acts were "willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff..." (*Id.* ¶ 23.) He further claims that he has suffered "humiliation, mental and physical distress, anxiety, and nervousness and has been greatly damaged" as a result of defendant's alleged conduct. (*Id.* ¶ 22.) He seeks economic damages for lost wages, as well as special and general compensatory damages. He also seeks punitive damages and an award of attorney's fees.

**B.   PROCEDURAL HISTORY**

Plaintiff filed this action in the San Francisco Superior Court on March 17, 2008, and served defendant with the Complaint on March 27, 2008. On April 1, 2008 defendant requested that plaintiff provide a Statement of Damages pursuant to California Code of Civil Procedure section 425.11. (Declaration of Lindsay S. Fitch ¶ 2 Exh. A.) Defendant even provided plaintiff with a blank copy of the California Judicial Council-approved Statement of Damages form to use. (*Id.* at ¶ 3) The form contains spaces in which a party may specify the amounts of general, special and punitive damages sought. (*See id.* Exh. B.) Instead of complying with the statute and completing the form, plaintiff asserted meritless objections.[1] (*Id.* at ¶ 4 Exh. C.) Defendant

---

[1] Plaintiff objected to defendant's request for a statement of damages claiming that this was not an action for personal injury or wrongful death, and therefore Code of Civil Procedure ("CCP") section 425.11 did not apply. This objection is without merit because plaintiff asserts a cause of action for intentional infliction of emotional distress, which is a claim for personal injury. *Schwab v. Rondel Homes*, 53 Cal. 3d 428 (1991); *see also O'Hara v. Storer Comms., Inc.*, 231 Cal. App. 3d 1101, 1118 (1991) ("[a]n injury is personal when it impairs the well-being or the mental or physical health of the victim"). Plaintiff further objected on the ground that he was not required to calculate the amount of general and punitive damages according to "BAJI" jury instruction 14.13. This objection lacks merit because the instruction simply tells the *jury* that there is no specific method of calculation that *they* must use in determining the amount of a general damages award. More importantly, the statute expressly requires plaintiffs to state the amount of general damages sought, and "[i]n personal injury actions, general damages include physical pain and mental suffering...." *Parish v. Peters*, 1 Cal. App. 4th 202, 211 (1991) (internal citation omitted).

2
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
SC1 17093848.1

timely removed the action to this Court on the basis of diversity of citizenship on April 28, 2008.

## III.

## ARGUMENT

Any civil action over which federal district courts have original jurisdiction may be removed from state court. 28 U.S.C. § 1441 (a). One source of original jurisdiction is diversity jurisdiction. *Id.* § 1331. A district court has diversity jurisdiction over any civil action between citizens of different states, so long as the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* § 1332. Plaintiff, having evaded defendant's attempt to determine the amount of damages claimed, now contends this action should be remanded on the sole ground that the amount in controversy requirement is not met.

### A.  LEGAL STANDARDS FOR DETERMINING AMOUNT IN CONTROVERSY

The Ninth Circuit has adopted the Fifth Circuit's procedure for determining the amount in controversy. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("[t]he Fifth Circuit has described an appropriate procedure for determining the amount in controversy"):

> The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.

*Id.* (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)). The defendant bears the burden of proving by a preponderance of the evidence that it is "more likely than not" that the amount in controversy exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). The jurisdictional minimum may be satisfied by claims for special and

1  general damages, punitive damages and attorneys' fees. *Simmons v. PCR Tech.*, 209 F. Supp. 2d
2  1029 (N.D. Cal. 2002).

3        A defendant fails to meet its burden in establishing the amount in controversy when the
4  following circumstances are present:

> (1) the complaint did not specify an amount of damages, and it was not otherwise facially apparent that the damages sought or incurred were likely above [$75,000]; (2) the defendants offered only a conclusory statement in their notice of removal that was not based on direct knowledge about the plaintiffs' claims; *and* (3) the plaintiff timely contested removal with a sworn, unrebutted affidavit indicating that the requisite amount in controversy was not present.

9  *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Columbia ("ANPAC")*
10 *v. Dow Quimica ce Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (emphasis added).

11 **B.  THE AMOUNT IN CONTROVERSY IN THE PRESENT CASE EXCEEDS $75,000**

12       None of the circumstances enumerated in *ANPAC* is present in this case. First, although
13 the amount of damages sought is not stated in the Complaint, it is facially apparent that the
14 amount sought will exceed $75,000. Second, based on a reasonable estimate of plaintiff's
15 alleged lost income and a review of jury verdicts in comparable cases, it is more likely than not
16 that at least $75,000 is at issue. Third, defendant has offered sufficient evidence that the amount
17 claimed by plaintiff exceeds the jurisdictional limit. Fourth, plaintiff has not only failed to
18 declare that he is seeking less than $75,000, but he has also refused to state the amount of his
19 claimed damages, in violation of state law. The amount in controversy exceeds $75,000, and
20 plaintiff's motion should be denied.

    **1.  A Sufficient Amount In Controversy Is Apparent On The Face Of The Complaint**

23       For the amount in controversy to be apparent on the face of the complaint it is not
24 necessary that the amount is expressly stated. *See Piazza v. EMPI*, 2008 U.S. Dist. LEXIS 28136
25 at *41(E.D. Cal. 2008); *Bassel v. 4Access Comms. Co.* 2008 U.S. Dist. Lexis 41012 at *5 (S.D.

28                                                         4
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
SCI 17093848.1

Cal. 2008)[2] (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999)). In *Luckett*, for example, the plaintiff alleged that she suffered heart problems after the defendant airline lost her luggage, in which she had left her medication. *Id.* at 297. The plaintiff alleged damages for property, travel expenses, an ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and a temporary inability to do housework. *Id.* Even though the complaint did not specify the amount of damages sought, the Fifth Circuit held that "[r]eading the face of the complaint, the district court did not err in finding that Luckett's claims exceed $75,000." Judge William W. Schwarzer cites *Luckett* favorably in his widely-cited treatise on federal civil procedure in California. *See* Schwarzer, et al., California Practice Guide, *Federal Civil Procedure Before Trial* ¶ 2:664a (discussing burden of proof re: amount in controversy).

As in *Luckett*, it is apparent from the face of the present Complaint that the amount in controversy exceeds $75,000. No particular proof is required to conclude that it is more likely than not, if plaintiff prevails on all his claims, that he will recover more than $75,000 in economic damages, emotional distress damages, punitive damages and attorney's fees. Plaintiff claims to have lost well over a year's income, and claims to have suffered "humiliation, mental and physical distress, anxiety and nervousness" as a result of allegedly "willful, intentional and malicious" conduct by a large corporate employer. Plaintiff is represented by attorneys who, according to their moving papers, claim they are entitled to fees at the rate of $400 per hour. Indeed, according to plaintiff, the amount in controversy grew by $4,000 simply by virtue of the present motion. A sufficient amount in controversy is facially apparent in this case.

2. **Plaintiff's Alleged Lost Income Damages Alone Exceeds the Jurisdictional Amount**

Plaintiff does not dispute that he worked as a stocker at $17.50 per hour, averaging 40 hours per week. (Declaration of Mike Rieke ¶ 3.) Therefore, his lost wages from the date of his termination to the time of removal are approximately $52,000. Conservatively estimating a trial

---

[2] True and correct copies of the *Piazza* and *Bassel* opinions are attached to the Fitch Declaration as Exhibit D.

date in April 2009, plaintiff will claim at least another $40,000.00 in lost income damages. Thus, his claim for lost income alone is *at least* approximately $90,000.[3]

Plaintiff argues that defendant's showing of plaintiff's potential wage loss is insufficient because it does not take his mitigation efforts into account. However, defendant is unaware what, if any, efforts plaintiff has made to mitigate his damages, and plaintiff provides no evidence of mitigation. As a result, it is undisputed that plaintiff's claim for lost income is alone sufficient to establish a sufficient amount in controversy.

### 3. Jury Verdicts In Comparable Cases Establish That More Than $75,000 Is In Controversy

Even if plaintiff could somehow show that his claim for lost income does not exceed the jurisdictional minimum, his claims for emotional distress damages, punitive damages and attorneys' fees easily fill the gap.

#### i. Emotional Distress And Punitive Damages

It is well established that punitive damages are a part of the amount in controversy when they are recoverable as a matter of law. *Romo v. FFG Ins. Co.*, 397 F. Supp 1237, 1240 (C.D. 2005) citing *Gibson v. Chrysler Corp.*, 261 F. 3d 927, 945 (9th Cir. 2001). California law allows the recovery of punitive damages based on claims for violations of FEHA, CFRA, wrongful termination in violation of public policy, and intentional infliction of emotional distress. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176 (1980); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); Cal. Govt. Code §12989.2(a). Accordingly, every cause of action alleged in plaintiff's Complaint includes a claim for punitive damages.

Punitive damages "should bear a reasonable relation to actual damages, even though no fixed ratio exists to determine the proper proportion." *Rosenor v. Sears, Roebuck & Co.*, 110 Cal. App. 3d 740, 751 (1980); *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003) (holding no bright line ratio exists for determining punitive damages, but ratio generally

---

[3] The actual claim is likely higher, because plaintiff is also apt to allege that he lost benefits, raises and promotions, and it must be assumed that he will be awarded something for them.

6

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

SCI 17093848.1

should not exceed "single digits"). In the present case, even an award of punitive damages with a 1:1 ratio to lost income damages alone would be sufficient to establish the full $75,000 amount in controversy.

To establish the amount of emotional distress and punitive damages in controversy, a defendant opposing a motion to remand may rely on jury verdicts in cases involving analogous facts. *Simmons*, 209 F. Supp. 2d at 1033-34; see also *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[t]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial"). The fact that the cases cited may involve distinguishable facts is not dispositive. *Id.* To establish the amount of emotional distress and punitive damages in controversy in this case, defendant directs the Court's attention to the following jury verdicts in similar cases:[4]

- In *Kolas v. Access Business Group LLC*, Los Angeles Superior Court No. BC362432 (verdict January 14, 2008), plaintiff sustained a herniated disc while working shortly after filing his workers compensation claim he was terminated by his employer allegedly because audits done before the injury showed that plaintiff was not doing his work properly and subjecting the company to regulatory problems. Plaintiff sued for age and disability discrimination and wrongful termination. The jury awarded plaintiff $400,000 in economic damages, and $200,000 in non-economic damages.

- In *Lopez v. Bimbo Bakeries USA Inc.*, San Francisco Superior Court Case No. CGC05445104 (verdict June 21, 2007), plaintiff delivery driver sued her employer for discrimination based on pregnancy, failure to accommodate, harassment, unlawful denial of leave under CFRA, failure to prevent, wrongful termination, and intentional infliction of emotional distress. Plaintiff informed defendant that she was two months pregnant and that the doctor had given her

---

[4] Copies of verdicts not contained in reported cases are attached to the Fitch Declaration as Exhibit E.

7
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
SC1 17093848.1

certain restrictions. Defendant responded by telling plaintiff to go home because they could not provide her with any work due to her restrictions (restrictions only required plaintiff to take a 15-20 minute break every two hours and restricted her from lifting more than 20 pounds). Defendant put her on medical leave for two months and then terminated her while she was on leave. The jury awarded plaintiff $218,700 in economic damages, $122,000 in non-economic damages, $2 million in punitive damages, and $1,059,351 in attorney's fees.

- In *Lima v. City of Los Angeles*, Los Angeles Superior Court No. BC353261 (verdict August 9, 2007), the plaintiff, a fire captain for the City of Los Angeles, alleged that he was subjected to harassment and discrimination based on his refusal to give female workers preferential treatment. The jury awarded plaintiff $790,000 in economic damages and $2.9 million in non-economic loss.

- In *Wysinger v. Automobile Club of Southern California*, Santa Barbara Superior Court Case No. 1132996 (verdict January 6, 2006), plaintiff sued his employer for age and disability discrimination, failure to accommodate, failure to engage in the interactive process and retaliation when they refused to transfer him to an office closer to his home due to his medical condition (rheumatoid arthritis). Plaintiff claimed that the long commute exacerbated his physical condition. The jury awarded plaintiff $284,000 in compensatory damages for retaliation and failure to engage in the interactive process, $1 million in punitive damages and $978,791 in attorney's fees.

- In *Daniels v. CVS*, San Francisco Superior Court, Case No. SF0342755 (verdict April 29, 2005), plaintiff sued for disability discrimination, failure to accommodate, retaliation and constructive discharge when he was forced to quit after defendant refused to reduce his work schedule to accommodate fatigue and illness due to HIV. The jury awarded $127,711 economic damages and $148,000 for emotional distress.

8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

SCI 17093848.1

- In *Velez v. Roche*, U.S. District Court, for the Northern District of California Case No. 02-00337 EMC (verdict February 4, 2004), plaintiff, a female surgeon in the military, alleged that the male military doctors made sexist and lewd comments about female patients as well as making disparaging comments about the abilities of female surgeons. Plaintiff alleged employment discrimination and sought damages for emotional distress. The jury awarded plaintiff $505,623 for emotional distress.

- In *Swinton v. Potomac*, 270 F.3d 794 (9th Cir. 2001), the plaintiff worked for $8.50 per hour in the shipping department of a cardboard company. He claimed that he was subjected to racially harassing jokes, and that the employer failed to take any remedial action. The jury awarded $5,612 in back pay, $30,000 for emotional distress, and $1 million punitive damages.

- *White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999). The plaintiff was a convenience store assistant manager who claimed that he was wrongfully terminated in retaliation for testifying on behalf of a former coworker at an unemployment compensation hearing. The jury awarded $42,000 compensatory damages and $300,000 punitive damages.

- In *Maxwell v. Beverly Enterprises*, 64 Cal. App. 4th 231 (1998), a nursing home social services director claimed that she was wrongfully terminated in violation of public policy in retaliation for reporting patient neglect. The jury awarded economic damages of $44,300 and $25,000 for emotional distress. The jury also awarded punitive damages of $1.55 million (later remitted to $500,000).

- In *Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418 (1993), the plaintiff claimed that he was wrongfully terminated in violation of public policy in retaliation for reporting certain unlawful conduct to management. The jury awarded $106,000 for lost wages and benefits, $200,000 for emotional distress and $500,000 punitive damages.

Taken together, these cases show that emotional distress and punitive damage awards can easily exceed $75,000 in employment discrimination cases.

### iii. Attorneys' Fees

Attorneys' fees may be included in calculating the amount in controversy if a statute or contract allows the recovery of fees. *Guglielmino,* 506 F.3d at 700 (amount in controversy requirement excludes only "interest and costs" and therefore includes attorney's fees.); *Simmons,* 209 F. Supp. 2d at 1034 (citing *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998)). Moreover, "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.* at 1035. Plaintiff's Complaint requests an award of attorneys' fees in this action pursuant to California Government Code section 12965.

Plaintiff does not dispute that he seeks attorneys' fees in this matter; nor does he contest that the fees will contribute substantially to the amount in controversy for jurisdictional purposes. In fact, plaintiff's counsel makes it very clear that attorney's fees will play a large part in the matter by expressly seeking fees in the amount of $4,000 for the preparation of the present motion. Of note, plaintiff's attorneys are from Los Angeles, and will no doubt claim hourly rates for time spent traveling to and from Northern California for depositions, hearings and trial.

In *Simmons,* the removing defendant established that the plaintiff, who was also suing for wrongful termination, incurred approximately $25,000 in lost income damages. The Court found that the claims for punitive damages, emotional distress damages and attorneys' fees brought the amount in controversy above the jurisdictional minimum, even though the complaint failed to state the amount of damages. As to the claim for fees, the Court relied on its experience and common sense in noting that maintaining an employment discrimination case "will undoubtedly require substantial effort from counsel."

> The Court notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages. The Court recognizes that the percentage of cases that ultimately go to trial is very small. Nonetheless, plaintiff's claims are unlikely to be immediately resolved. While attorneys' fees alone would not necessarily exceed $75,000, when viewed in combination with

---
10
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
SCI 17093848.1

the alleged compensatory, punitive and emotional distress damages, the jurisdictional minimum is clearly satisfied.

*Id.* at 1035. So it is in the present case.

### 4. Defendant Has Offered Sufficient Evidence That The Amount Claimed By Plaintiff Exceeds The Jurisdictional Limit

Plaintiff relies on *Gaus v. Miles, Inc.*, 980 F. 2d 564 (9th Cir. 1992) for the proposition that the party asserting jurisdiction must offer facts into evidence which make it more probable than not that the amount claimed is in excess of the jurisdictional limit. Plaintiff further contends that defendant has failed to do so and analogizes defendant's factual showing to that of the defendant in *Gaus*. Plaintiff's analogy is false.

In *Gaus*, the court held that if the amount of damages sought by plaintiff was unclear, defendant must prove facts to support jurisdiction. *Id.* at 566-567. The Court, however, did not address the nature of the showing that defendant would be required to make because defendant offered "no facts whatsoever to support the court's exercise of jurisdiction, but instead, merely alleged that "the matter in current controversy . . . exceeds the sum of $50,000." This statement alone was not enough to satisfy defendant's burden. *Id.* at 567; see also *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753 (E.D. Mich. 1990) (holding that defendant's bald recitation that "the amount in controversy exceeds $ 50,000," without the defendant identifying any specific factual allegations *or provisions in the complaint which might support that proposition*, should provoke *sua sponte* remand).

Unlike the situation in *Gaus*, defendant has stated facts in its Notice of Removal and in this Opposition sufficient to meet its burden on the amount in controversy. Defendant has identified specific allegations and provisions in plaintiff's complaint and has presented evidence of his potential lost wages and attorney's fees. Defendant has also provided jury verdicts demonstrating punitive damage and emotional distress awards in comparable employment actions. Thus, defendant has provided far more than the bald assertion of jurisdiction that the *Gaus* court found inadequate.

Plaintiff also contends that in *Bell v. Preferred Life Assurance Society*, 320 U.S. 328

11
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
SC1 17093848.1

(1943), the court held that only the amount of actual and punitive damages that are specifically claimed should be considered in assessing the jurisdictional amount, but this misstates the court's holding. In *Bell*, the Supreme Court reversed the district court's ruling that the amount in controversy did not exceed the jurisdictional limit and expressly held that "where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed." *Id.* at 240.

The issue presented in *Bell* was not whether petitioner specifically alleged the requisite amount to create jurisdiction; it was whether petitioner properly pled "gross fraud" that would entitle him to a punitive damages award. *Id.* at 241-42. The Court held that the petitioner's complaint did allege the equivalent of gross fraud and that although petitioner's actual damages could not exceed $1,000, it was possible, based on the allegations in the complaint, that evidence could be introduced at trial justifying a jury verdict for actual and punitive damages exceeding the jurisdictional amount. *Id.* at 242-43. Accordingly, the court held that jurisdiction was proper. *Id.*

Here, plaintiff specifically prays for punitive damages as to each cause of action in his Complaint. Plaintiff's failure to allege a specific amount with regard to the damages he seeks for actual and punitive damages does not deprive the court of jurisdiction. Moreover, defendant presented jury verdicts demonstrating potential punitive damages awards in both its Notice of Removal and the instant motion, which is far more evidence than that presented by the petitioner in *Bell*, where the Court ruled that federal jurisdiction was proper.

5. **Plaintiff Has Failed To Make A Binding Representation That He Seeks Less Than $75,000, In Order To Justify Remand**

Defendant has made a prima facie showing that the amount in controversy exceeds $75,000. This showing is at least sufficient to shift the burden of *production* to plaintiff to show that the amount in controversy does not exceed the jurisdictional minimum. *See ANPAC*, 988 F.2d 559, 565 (holding that sworn, unrebutted affidavit indicating that the requisite amount in controversy is not present supports remand). To prevail on this motion, plaintiff must now make

a binding representation that he seeks less than $75,000 in damages and fees. *See Richmond*, 897 F. Supp. at 451 (denying motion to remand).

In *Richmond*, the defendant insurer removed an action in which the plaintiff, on behalf of a class of insureds, claimed bad faith denial of coverage. In the state court, the plaintiff had filed a Notice of Claim for Punitive Damages, purporting to limit each plaintiff's punitive damages claim to $10,000. However, the plaintiff also reserved the right to modify the request for punitive damages as discovery progressed. *Id.* at 451. The plaintiff then moved to remand.

In opposing the motion to remand, the defendant showed that similar claims overwhelmingly resulted in verdicts well over the jurisdictional amount. *Id.* Despite the plaintiff's representation that punitive damages would be limited to $10,000, the court denied the motion to remand. The court reasoned that "although plaintiffs have not made any explicit demands for over [the jurisdictional minimum], plaintiffs make no binding representation that they seek any less than that amount . . . ." *Id.* Therefore, the court held that the defendant had met its burden of establishing the amount in controversy, and denied the motion to remand.

Here, defendant has shown, through jury verdicts in comparable cases and lost wage estimates, that the amount in controversy more likely than not exceeds $75,000. Plaintiff has offered no representation, binding or otherwise, that the amount in controversy does not exceed $75,000. In fact, plaintiff has studiously avoided revealing the amounts of his claimed damages, even to the point of violating the state court rule requiring him to state those amounts. The only reasonable conclusion that can be drawn from this evasion is that the amount in controversy actually exceeds $75,000.

There can be little doubt that, had defendant waited to remove the case until after it obtained an admission from plaintiff as to the amount in controversy, plaintiff would have argued that the removal was untimely because the amount in controversy was apparent from the face of the complaint. There can also be little doubt that if the Court decides to grant plaintiff's motion, the parties will be back before this Court once defendant obtains a statement of damages and/or admissions from plaintiff as to the amount in controversy.

### C. EVEN IF PLAINTIFF'S MOTION IS GRANTED PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES OR COSTS

In plaintiff's Motion for Remand he alleges that he is entitled to attorney's fees under 28 U.S.C. § 1447 (c) which provides in pertinent part, "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (emphasis added.) Contrary to plaintiff's assertion in his motion there is no automatic entitlement to an attorney's fee award on remand. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). In *Martin*, the court held that the key factor in deciding whether an award is "just" under section 1447(c) is the propriety of the removal. *Id.* at 136. The court also held that "absent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* The court further noted that factual circumstances, including plaintiff's failure to disclose facts necessary to determine jurisdiction should be taken into account. *Id.* at 141.

Here, not only did defendant have an objectively reasonable basis for removal, including plaintiff potential lost wages, attorney's fees and recent jury verdicts supporting various damages awards; defendant also attempted to verify the value of plaintiff's claims though its request for a statement of damages, but was met only with meritless objections. Plaintiff's refusal to provide any information whatsoever to dispute the fact that the value of his claims exceeds the requisite amount in controversy is very telling as to the propriety of the removal.

### CONCLUSION

For all the foregoing reasons, defendant respectfully requests that plaintiff's motion to remand this action to state court be denied.

DATED: June 19, 2008

SEYFARTH SHAW LLP

By _____
Mark D. Grajski
Lindsay S. Fitch
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

SC1 17093848.1