1 | SEYFARTH SHAW LLP
Mark P. Grajski (State Bar No. 178050)
2 | Lindsay S. Fitch (State Bar No. 238227)
400 Capitol Mall, Suite 2350
3 | Sacramento, California 95814-4428
Telephone: (916) 448-0159
4 | Facsimile: (916) 558-4839

5 | Attorneys for Defendant
COSTCO WHOLESALE CORPORATION
6

7

8

9 |                    UNITED STATES DISTRICT COURT

10 |                   FOR THE NORTHERN DISTRICT

11 | JOSE ISMAEL RIVERA                ) Case No. C 08-02202 CW
                                      )
12 |          Plaintiff,              ) **DECLARATION OF LINDSAY S.**
                                      ) **FITCH IN SUPPORT OF**
13 |    vs.                           ) **DEFENDANT'S OPPOSITION TO**
                                      ) **PLAINTIFF'S MOTION TO REMAND**
14 | COSTCO WHOLESALE CORPORATION     )
                                      )
15 |          Defendant.             )
                                      )
16 |

17 |     I, Lindsay S. Fitch, declare as follows:

18 |     1.    I am an attorney licensed to practice in the State of California as well as the

19 | Northern District, and am employed by the law firm of Seyfarth Shaw LLP, attorneys of record

20 | for defendant COSTCO WHOLESALE CORPORATION. This declaration is based on my own

21 | personal knowledge, and if called upon to do so, I could and would competently testify to the

22 | matters set forth herein.

23 |     2.    On or around March 28, 2008 defendant requested that plaintiff provide a

24 | Statement of Damages pursuant to California Code of Civil Procedure section 425.11. A true

25 | and correct copy of the letter requesting that plaintiff provide a Statement of Damages is attached

26 | hereto as Exhibit "A".

27 |

28 |                                          1

DECLARATION OF L. FITCH IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO REMAND

SC1 17094333.1

1    3.    Enclosed with its request for a Statement of Damages defendant provided plaintiff

2  with a blank copy of the California Judicial Council-approved Statement of Damages form.  A

3  true and correct copy of the Judicial Council form is attached hereto as Exhibit "B".

4    4.    Plaintiff failed to respond to defendant's request with substantive information and

5  merely asserted objections.  A true and correct copy of plaintiff's response is attached hereto as

6  Exhibit "C".

7    5.    True and correct copies of unpublished opinions cited in defendants Opposition to

8  Plaintiff's Motion for Remand are attached hereto as Exhibit "D".

9    6.    True and correct copies of jury verdicts not contained in reported cases are

10  attached hereto as Exhibit "E".

11    I declare under penalty of perjury under the laws of the State of California that the

12  foregoing is true and correct.

13    Executed this 19 day of June, 2007, at Sacramento, California.

14

15

16    Lindsay S. Fitch

17

18

19

20

21

22

23

24

25

26

27

28

2

DECLARATION OF L. FITCH IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO REMAND

SC1 17094333.1

# EXHIBIT A



**SEYFARTH SHAW** LLP
ATTORNEYS

400 Capitol Mall

Suite 2350

Sacramento, California 95814-4428

(916) 448-0159

fax (916) 558-4839

www.seyfarth.com

Writer's direct phone
(916) 498-7006

Writer's e-mail
mgrajski@seyfarth.com

Writer's direct fax
916-288-6306

March 28, 2008

## VIA FACSIMILE (310) 552-7814 & U.S. MAIL

Alicia Olivares, Esq.
The Feldman Law Firm
10100 Santa Monica Blvd., Ste 2490
Century City, CA  90067

Re:    *Rivera v. Costco Wholesale Corporation*
San Francisco County Superior Court Case No. CGC-08-473388

Dear Ms. Olivares:

This firm represents Costco Wholesale Corporation in the above-referenced case.  Pursuant to Code of Civil Procedure section 425.11, please provide us with a statement of the nature and amount of damages plaintiff seeks.  For your convenience I attach a copy of the appropriate Judicial Council form.  We will accept mail or fax service of the statement.

Sincerely,

SEYFARTH SHAW LLP

Mark P. Grajski

MPG:ljm
Enclosure

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA

SC1 17092163.1

# EXHIBIT B

CIV-050

## -DO NOT FILE WITH THE COURT-
## - UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):        TELEPHONE NO.: | FOR COURT USE ONLY |

ATTORNEY FOR (name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF:

DEFENDANT:

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER: |
|---|---|

To (name of one defendant only):
Plaintiff (name of one plaintiff only):
seeks damages in the above-entitled action, as follows:

### 1. General damages                                                                    AMOUNT
- a. ☐  Pain, suffering, and inconvenience ........................................................................$_____
- b. ☐  Emotional distress.........................................................................................$_____
- c. ☐  Loss of consortium........................................................................................$_____
- d. ☐  Loss of sociey and companionship (wrongful death actions only)......................................$_____
- e. ☐  Other (specify) _____$_____
- f. ☐  Other (specify) _____$_____
- g. ☐  Continued on Attachment 1.g.

### 2. Special damages
- a. ☐  Medical expenses (to data)..............................................................................$_____
- b. ☐  Future medical expenses (present value) ...............................................................$_____
- c. ☐  Loss of earnings (to date) ...............................................................................$_____
- d. ☐  Loss of future earning capacity (present value) .......................................................$_____
- e. ☐  Property damage...........................................................................................$_____
- f. ☐  Funeral expenses (wrongful death actions only)........................................................$_____
- g. ☐  Future contributions (present value) (wrongful death actions only).................................$_____
- h. ☐  Value of personal service, advice, or training (wrongful death actions only)......................$_____
- i. ☐  Other (specify) _____$_____
- j. ☐  Other (specify) _____$_____
- k. ☐  Continued on Attachment 2.k.

3. ☐    **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of (specify)..$_____
when pursuing a judgment in the suit filed against you.

Date:

▶

| _____<br>(TYPE OR PRINT NAME) | _____<br>(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF) |
|---|---|

(Proof of service on reverse)

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

STATEMENT OF DAMAGES
(Personal Injury or Wrongful Death)

Page 1 of 2

Code of Civil Procedure, §§ 425.11, 425.115
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CIV-050

| PLAINTIFF: | CASE NUMBER: |
|---|---|
| DEFENDANT: | |

## PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. ☐   Statement of Damages ☐   Other *(specify):*

   b. on *(name):*
   c. by serving ☐ defendant ☐ other *(name and title or relationship to person served):*

   d. ☐ by delivery   ☐ at home   ☐ at business
      (1) date:
      (2) time:
      (3) address:
   e. ☐ by mailing

      (1)date:
      (2) place:

2. Manner of service *(check proper box):*
   a. ☐   **Personal service. By personally delivering copies. (CCP § 415.10)**
   b. ☐   **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. ☐   **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**

   d. ☐   **Mail and acknowledgment service.** By mailing (by first- class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**

   e. ☐   **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**

   f. ☐   **Other** *(specify code section):*
      ☐ additional page is attached.
3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $
5. Person serving:
   a. ☐ California sheriff, marshal, or constable
   b. ☐ Registered California process server
   c. ☐ Employee or independent contractor of a registered California process server
   d. ☐ Not a registered California process server
   e. ☐ Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

**PROOF OF SERVICE**
**(Statement Of Damages)**

# EXHIBIT C

1  ALICIA OLIVARES (SBN 181412)
   RAVEN WARD SARNOFF (SBN 240133)
2  **THE FELDMAN LAW FIRM**
   **A Professional Law Corporation**
3  10100 Santa Monica Blvd., Suite 2490
   Los Angeles, California 90067
4  Phone: (310) 552-7812
   Fax: (310) 552-7814

5
   Attorneys for Plaintiff,
6  JOSE ISMAEL RIVERA

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **COUNTY OF SAN FRANCISCO - NORTHERN DISTRICT**

10

11  JOSE ISMAEL RIVERA, an individual,          CASE NO. CGC-08-473388

12                                              **PLAINTIFF'S RESPONSE TO**
          Plaintiff,                            **DEFENDANTS' REQUEST FOR**
13                                              **STATEMENT OF DAMAGES**
          vs.
14
    COSTCO WHOLESALE
15  CORPORATION, a corporation, and
    DOES 1 through 100, inclusive,
16
          Defendants.
17

18

19

20

21          PROPOUNDING PARTY:    DEFENDANT, COSTCO WHOLESALE CORP.

22          RESPONDING PARTY:     PLAINTIFF, JOSE ISMAEL RIVERA

23          SET NO.:              ONE

24          PLAINTIFF, JOSE ISMAEL RIVERA, pursuant to Code of Civil Procedure § 425.11,

25  hereby objects and responds to Defendant's Request for Statement of Damages, as follows:

26  ////

27  ////

28  ////

                                   1
────────────────────────────────────────────────────
        PLAINTIFF'S OBJECTIONS TO REQUEST FOR STATEMENT OF DAMAGES

*(left margin, vertical)* THE FELDMAN LAW FIRM A PROFESSIONAL CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

## OBJECTIONS

Code of Civil Procedure, Section 425.11, authorizes defendant to request a statement setting forth the nature and amount of damages being sought, "[w]hen a complaint is filed in the superior court to recover damages for **personal injury** and **wrongful death** . . ." [Emphasis added].

Plaintiff hereby objects to the Request for Itemization of Damages on the grounds that Plaintiff's action herein does not allege any causes of action for personal injury or wrongful death. Plaintiff's suit alleges violations of the California Fair Employment and Housing Act, and Plaintiff seeks to recover damages for (1) Violation of the California Family Rights Act; (2) Wrongful Termination In violation of Public Policy; and (3) Intentional Infliction of Emotional Distress.

Plaintiff further objects to the Request for Itemization of Damages on the grounds that Plaintiff is not required to calculate the amount of general damages and punitive damages. The measure of damages for pain and suffering, according to BAJI 14.13 is:

"Reasonable compensation for any pain, discomfort, fears, anxiety and other mental and emotional distress suffered by the plaintiff and of which injury was a cause [and for similar suffering reasonably certain to be experienced in the future form the same cause].

No definite standard (or method of calculation) is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation. [Furthermore, the argument of counsel as to the amount of damages is not evidence or reasonable compensation.] In making an award for pain and suffering you shall exercise your authority with calm and reasonable judgment and the damages you fix [shall be just and reasonable in the light of the evidence.

This is non-economic damage.

[If you conclude that the plaintiff is entitled to recover compensation

2

for future non-economic damages, you must determine that amount in current dollars, that is, the amount paid at the time of judgment that will compensate a plaintiff for future pain and suffering.

The precise method used in determining future economic losses need not be followed by you in your determination of future non-economic damages.]"

Dated: April 28, 2008

THE FELDMAN LAW FIRM
A Professional Corporation

By: _Alicia Olivares_____

ALICIA OLIVARES
Attorneys for Plaintiff,
JOSE ISMAEL RIVERA

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

PLAINTIFF'S OBJECTIONS TO REQUEST FOR STATEMENT OF DAMAGES

**CERTIFICATE OF SERVICE**

COUNTY OF LOS ANGELES    )
                              )   **ss.**
STATE OF CALIFORNIA       )

I am employed in the County of Los Angeles in the State of California. I am over the age of 18 and not a party to the within action; my business address is 1801 Century Park East, Suite 1820, Los Angeles, California, 90067.

On the date set forth below, I served the following documents:

PLAINTIFF'S OBJECTIONS TO REQUEST FOR STATEMENT OF DAMAGES

in this action by placing a true copy thereof in a sealed envelope addressed as follows:

**Mark P. Grajski**
**Seyfarth Shaw LLP**
**400 Capital Mall**
**Suite 2350**
**Sacramento, CA  95814-4428**

[X]    By Mail: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the US Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    By Facsimile:  From facsimile number (310) 552-7814, I caused each such document to be transmitted by facsimile machine, to the parties and numbers indicated above, pursuant to Rule 2008. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration.

[ ]    By Overnight Delivery: On the date indicated below, I placed a true copy of the above-mentioned document(s), together with an unsigned copy of this declaration, in a sealed envelope or package designated by the OVERNITE EXPRESS with delivery fees or provided for, addressed to the person(s) as indicated above and deposited same in a box or other facility regularly maintained by OVERNITE EXPRESS or delivered same to an authorized courier or driver authorized by OVERNITE EXPRESS to receive said documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 28, 2008, at Los Angeles, California.

_Cynthia Reyes_
Cynthia Reyes

4

PLAINTIFF'S OBJECTIONS TO REQUEST FOR STATEMENT OF DAMAGES

THE FELDMAN LAW FIRM
A PROFESSIONAL CORPORATION

# EXHIBIT D

LEXSEE 2008 U.S. DIST. LEXIS 28136

**Julia Piazza, Plaintiff, v. EMPI, Inc., Larry Davis, and DOES 1 - XX, Defendants.**

**1:07-cv-00954-OWW-GSA**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DIS-TRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 28136*

**February 28, 2008, Decided**

**COUNSEL:** [*1] For Julia Piazza, Plaintiff: Nicholas J.P. Wagner, LEAD ATTORNEY, Law Offices Of Wagner & Jones, Fresno, CA.

For Empi, Inc., Defendant: Sarah Ann Jain, LEAD ATTORNEY, Michael M. Pfyl, Paul Hastings Janofsky and Walker (San Francisco), San Francisco, CA.

**JUDGES:** Oliver W. Wanger, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Oliver W. Wanger

**OPINION**

ORDER DENYING PLAINTIFF'S MO-TION TO REMAND (Doc. 6) AND DENY-ING PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF HARRY L. ZIM-MERMAN (Doc. 11)

I. Introduction.

This case concerns claims for the sexual harassment, sexual battery, retaliation, wrong-ful termination of Julia Piazza ("Plaintiff"), and failure to pay wages by EMPI, Inc. ("EMPI") and Larry Davis ("Davis") (collectively "De-fendants"). Before the court for decision are Plaintiff's motion to remand this case to the Fresno County Superior Court ("Motion to Remand") and Plaintiff's motion to strike the declaration of Harry L. Zimmerman ("Motion to Strike"). EMPI opposes both motions. EMPI submitted Davis's Declaration ("Davis Declara-tion") in support of its opposition to Plaintiff's Motion to Remand. Davis, however, has not been served with a copy of the summons and First Amended Complaint as of August 24, 2007. [1] Davis Decl. [*2] P 5. For the reasons stated below, Plaintiff's Motion to Remand and Motion to Strike are denied.

1 Plaintiff attempted to serve Davis with the summons and First Amended Complaint on July 29, 2007, through substituted service. Plaintiff left a copy of the summons and First Amended Complaint with an individual by the name of Sherri Davis at 2914 Sommer Star Road, Placerville, CA 95667, a dwelling house or usual place of abode. This is Davis's former residence, which he sold in May 2006. Davis Decl. P 4. Davis does not know of any individual named Sherri Davis and has never au-thorized anyone with that name to accept legal service on his behalf. Davis Decl. P 5.

## II. Background.

Plaintiff filed her original Complaint for Compensatory and Punitive Damages ("Original Complaint") in Fresno County Superior Court on April 18, 2007, alleging state law causes of action for sexual harassment and retaliation, sexual battery, termination in violation of public policy, breach of employment contract, failure to pay wages, and waiting time and penalties. Plaintiff served EMPI by personal service on April 24, 2007. The proof of service, which was filed with the Fresno County Superior Court on May 15, 2007, [*3] indicates "Lynn Masanz: Managing Agent for Service of Process" at "599 Cardigan Road[,] St. Paul, MN. 55126-4099" on "4-24-07" at "1:15 p.m." received the summons and Original Complaint on behalf of EMPI.

Lynn Masanz ("Masanz"), the individual whom Plaintiff served with the Original Complaint, is a medical billing assistant in EMPI's Minnesota office. Masanz Decl. P 1; Zimmerman Suppl. Decl. P 3. As a medical billing assistant Masanz handles invoices and requests for medical records. Masanz Decl. P 2. Masanz is not an officer, managing agent, or general agent of EMPI. Masanz Decl. P 4; Zimmerman Suppl. Decl. P 3. EMPI never authorized Masanz to receive service of process on behalf of the company. Masanz Decl. P 4; Zimmerman Suppl. Decl. P 3.

On May 14, 2007, Robert Kristoff ("Kristoff"), counsel for EMPI, called Plaintiff's counsel and spoke with his assistant. Kristoff Decl. P 3. Kristoff informed her that EMPI had not been properly served with the Original Complaint, and the Original Complaint incorrectly named EMPI as "EMPI Medical, Inc." Id. Kristoff also informed Plaintiff's counsel's assistant that if Plaintiff filed a first amended complaint with EMPI's correct name and sent it [*4] to Kristoff, he would accept service on behalf of EMPI. Id. On June 1, 2007, Kristoff received a copy of the summons and First Amended Complaint ("FAC") cor-

rectly identifying EMPI. Id. at P 4. Kristoff signed an acknowledgment of receipt and accepted service on behalf of EMPI that same day. Id.

In response to the FAC, which was filed in Fresno County Superior Court on May 23, 2007, EMPI filed its Notice of Removal on July 2, 2007. EMPI's Notice of Removal invokes the federal court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1).

## III. Legal Standard.

A district court may remand to state court a case that has been removed to the district court if at any time it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). A motion to remand on the basis of any defect in the removal procedure must be made within 30 days of the filing of the notice of removal. Id. Where a motion for remand is not made within 30 days of removal of the case to the district court, the court must remand the case to state court sua sponte when federal subject matter jurisdiction is lacking. A federal court must determine its own jurisdiction even if the parties fail   [*5] to raise the issue. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).

Federal courts construe removal statutes strictly to limit removal jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992). Removal is generally proper when the district courts have original jurisdiction over the action. See 28 U.S.C. § 1441; Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). Jurisdiction must be determined from the face of the complaint, Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987), and it must be clear from the face of the complaint under the well-pleaded complaint rule that federal subject matter jurisdiction exists. Oklahoma Tax Comm'n. v. Graham, 489

U.S. 838, 840-41, 109 S. Ct. 1519, 103 L. Ed. 2d 924 (1989) (per curiam).

IV. Discussion.

A. Motion to Strike Zimmerman Declaration.

Before turning to the merits of the Motion to Remand, Plaintiff's Motion to Strike must be addressed. Plaintiff filed two identical and separate documents entitled "Plaintiff's Notice of Motion and Motion To Strike Declaration of Harry L. Zimmerman Submitted by Defendant EMPI in Support of EMPI's Notice of Removal." (Docs. 11 and 12). The Motion to Strike reads [*6] "This motion will be based upon this Notice, the attached Memorandum of Points and Authorities, on all pleadings and documents on file herein, and on such other oral and documentary evidence that may be presented at the hearing of this motion." Plaintiff neither attached a memorandum of points and authorities to her Motion to Strike (Docs. 11 and 12), nor did she file the memorandum of points and authorities as a separate document. EMPI filed an opposition brief to Plaintiff's Motion to Strike. Plaintiff did not file a reply brief.

Plaintiff's Motion to Remand, however, references her Motion to Strike. In the Motion to Remand, Plaintiff contends there is no evidentiary support submitted in EMPI's Notice of Removal to establish the citizenship of either EMPI or Davis. Plaintiff further contends the Zimmerman Declaration lacks foundation, contains impermissible hearsay, and contains conclusory allegations.

On July 2, 2007, and in conjunction with its Notice of Removal, EMPI filed the "Declaration of Harry L. Zimmerman in Support of Notice of Removal" ("Zimmerman Declaration"). In the Zimmerman Declaration, Mr. Zimmerman declares that he is the Executive Vice President and General Counsel [*7] of EMPI; that EMPI is incorporated under the laws of Minnesota and maintained its principal place of

business in Minnesota, both at the time of removal and when Plaintiff commenced this case; that according to EMPI's personnel records, Davis's home residence changed from California to Missouri on June 19, 2006, based on Davis's communication to EMPI that he moved to Missouri; and that on June 27, 2007, Mr. Zimmerman called Davis at his home in Missouri, and as of that date, Davis was still residing there.

Plaintiff's Motion to Strike lacks merit. The first paragraph of the Zimmerman Declaration indicates Mr. Zimmerman is the Executive Vice President and General Counsel of EMPI. Because of his high-level position with EMPI, Mr. Zimmerman has personal knowledge of information concerning the company's legal status, state of incorporation, and principal place of business. While the Zimmerman Declaration does not include EMPI's articles of incorporation, Mr. Zimmerman's personal knowledge may include inferences and opinions, so long as they are grounded in personal observation and experience. *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir. 1994). As general counsel, Zimmerman has access [*8] to intimate information regarding EMPI's legal affairs. In any event, EMPI filed the "Supplemental Declaration of Harry Zimmerman In Support of Defendant EMPI, Inc.'s Opposition to Plaintiff's Motion to Remand" ("Supplemental Zimmerman Declaration"), which further clarifies any infirmities with the Zimmerman Declaration. Attached to the Supplemental Zimmerman Declaration are EMPI's "Articles of Amendment and Restated Articles of Incorporation of EMPI, Inc.[,]" which were signed by Mr. Zimmerman on February 26, 2007, and filed with the Minnesota Secretary of State on March 2, 2007. The Restated Articles of Incorporation establish EMPI is a Minnesota corporation.

Mr. Zimmerman's reference to EMPI's personnel records maintained in the ordinary course of the company's business indicating

Davis moved from California to Missouri on June 19, 2006 is not hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Fed. R. Evid. 801(d)*. "Hearsay is not admissible except as provided by these rules . . ." *Fed. R. Evid 802*. Federal Rule of Evidence ("FRE") 803 contains numerous [*9] exceptions to the hearsay rule. Among these exceptions is the business records exception which provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with *Rule 902(11)*, *Rule 902(12)*, or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

*Fed. R. Evid. 803(6)*. The Zimmerman Declaration indicates EMPI maintains personnel records in its ordinary course of business, and the company's records indicate Davis's home address changed from California to Missouri on June 19, [*10] 2006. This portion of the Zimmerman Declaration falls within the business records exception to the hearsay rule. While Plaintiff may challenge the sufficiency of Davis's home address contained in EMPI's business records to determine his citizenship for diversity jurisdiction purposes, that inquiry is separate and distinct from the standards for admissibility.

Plaintiff's Motion to Strike the Zimmerman Declaration is DENIED.

B. Request for Judicial Notice.

Plaintiff requests the court to take judicial notice of EMPI's registration with the California Secretary of State under *FRE 201(b)*. Attached to Plaintiff's request for judicial notice is a copy of EMPI's registration from the California Secretary of State's website. EMPI does not oppose Plaintiff's request for judicial notice. EMPI's registration with the California Secretary of State is an official public record and its contents are not reasonably in dispute; it is therefore appropriately the subject of judicial notice under *FRE 201(b)(2)*. *Association of Irritated Residents v. Fred Schakel Dairy, 460 F. Supp. 2d 1185, 1189-90 (E.D. Cal. 2006)*; *see also Reiner v. Washington Plate Glass Co., Inc., 229 U.S. App. D.C. 136, 711 F.2d 414, 416 (D.C. Cir. 1983)* (taking [*11] judicial notice of appellee's date of incorporation by consulting the records of the District of Columbia Recorder of Deeds Office).

The attached copy of EMPI's registration contains the following information:

CORPORATION

EMPI, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EMPI, INC. (MINNESOTA)

NUMBER: C1881016 DATE FILED: 1/5/1994 STATUS: Surrender JURISDICTION: Minnesota

ADDRESS

599 Cardigan Road

ST Paul, MN 55126

AGENT FOR SERVICE OF PROCESS

The Prentice-Hall Corporation System, Inc.

PO Box 526036

Sacramento, CA 95852

The copy of EMPI's registration also contains the following disclaimer: "If the status of the corporation is 'Surrender', the agent for service of process is automatically revoked. Please refer to *California Corporations Code Section 2114* for information relating to service upon corporations that have surrendered." The document that Plaintiff requests the court to take judicial notice of indicates EMPI's status was in fact "Surrender." The copy of EMPI's registration indicates the information was current as of July 20, 2007.

For the same reasons stated above, the court also takes judicial notice of EMPI's current registration status with the California Secretary of State under *FRE 201(c)*. [*12] [2] EMPI's current registration status is "Active." EMPI's current registration contains the following information:

> 2    A search of the California Secretary of State's website using the term "EMPI" produced five results, one of which provides EMPI's current registration and another being the registration that Plaintiff requested the court to take judicial notice of.

CORPORATION

EMPI, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EMPI, INC. (MINNESOTA)

NUMBER: C2976714 DATE FILED: 3/8/2007 STATUS: Active JURISDICTION: Minnesota

ADDRESS

9800 Metric Blvd

Austin, TX 78758

AGENT FOR SERVICE OF PROCESS

CT Corporation System

818 West Seventh St

Los Angeles, CA 90017

Plaintiff's request for judicial notice is GRANTED.

C. Motion to Remand to Fresno County Superior Court.

Plaintiff advances several reasons why the court should remand this case to Fresno County Superior Court. First, EMPI's Notice of Removal was untimely. Second, EMPI's Notice of Removal was factually deficient and cannot be supplemented. Third, complete diversity does not exist between the parties. Fourth, EMPI failed to establish that the amount in controversy requirement is satisfied.

1. Timeliness of EMPI's Notice of Removal.

Plaintiff contends [*13] EMPI's Notice of Removal was untimely because EMPI waited sixty-nine days after service to file its Notice of Removal. EMPI maintains it timely filed its Notice of Removal on July 2, 2007, because Plaintiff's service of her Original Complaint and summons on April 24, 2007, was ineffective. EMPI further maintains Plaintiff properly effectuated service of the FAC and summons on June 1, 2007, which triggered the thirty-day period to remove this case from state court to federal court.

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and

division embracing the place where such action is pending." *28 U.S.C. § 1441(a)*. If a defendant or defendants desire to remove a civil action from state court to federal court, they must file "a notice of removal signed pursuant to *Rule 11 of the Federal Rules of Civil Procedure* and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." *28 U.S.C. § 1446(a)*.

"The [*14] notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." *28 U.S.C. § 1446(b)*. "The statutory time limit for removal petitions is merely a formal and modal requirement and is not jurisdictional." *Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th Cir. 1980)*. "Although the time limit is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights." *Id.*

Plaintiff correctly identifies the proper method to effectuate service upon a corporation under California law and the Federal Rules of Civil Procedure. In California, "[a] civil action is commenced by filing a complaint with the court." *Cal. Code. Civ. P. § 411.10*. "[T]he court in which an action is pending has jurisdiction over a party from the time the summons is served on him as provided by Chapter 4 (commencing with *Section 413.10*." *Cal. Code. Civ. P. § 410.50*.

A summons may be served upon a corporation [*15] by delivering a copy of the summons and the complaint by any of the following methods:

(a) To the person designated as agent for service of process [as

provided by the California Corporations Code].

(b) To the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process.

*Cal. Code. Civ. P. § 416.10*. Similarly, the Federal Rules of Civil Procedure provide service upon a corporation may be effected

[pursuant to the law of the state in which the district court is located], or by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant . . . .

*Fed. R. Civ. P. 4 (h) (1)*.

Plaintiff did not properly serve EMPI on April 24, 2007. Plaintiff's proof of service describes service on Lynn Masanz as EMPI's "managing agent for [*16] service of process." The proof of service asserts Fresno Attorney Service and Andy Lonergan personally served Lynn Masanz. It is unclear whether Plaintiff's counsel, Fresno Attorney Service, or Andy Lonergan completed the proof of service naming Lynn Masanz as EMPI's managing agent. EMPI has provided clear and uncontroverted evidence, through the Supplemental Zimmerman Declaration and Lynn Masanz's own declaration ("Masanz Declaration"), that Masanz is

not an individual authorized to receive service on behalf of EMPI. Masanz is a medical billing assistant--a low-level employee at EMPI--who handles medical invoices and requests for medical records. Masanz states in her declaration that she is neither an officer, managing agent, or high-ranking employee, nor has she ever been authorized to accept service of process on behalf of EMPI, nor has Mr. Zimmerman ever authorized her to accept service. Masanz admits in her declaration that she received a package on April 24, 2007, which contained the Original Complaint, and that she forwarded it on to the administrative assistant to the Executive Vice President of Operations. As Masanz is not a person authorized to receive service under California [*17] Code of Civil Procedure § 416.10, Plaintiff's attempted service on EMPI of the Original Complaint and summons is invalid.

The only remaining question is whether under 28 U.S.C. § 1446(b), the thirty-day removal period is triggered when the defendant receives a summons and complaint regardless of whether service was proper, or whether proper service is a prerequisite to commencement of the thirty-day removal period. Two cases provide useful guidance. In *Estate of Baratt v. Phoenix Mut. Life Ins. Co., 787 F. Supp. 333 (W.D.N.Y. 1992)*, the district court held that improper service did not trigger the thirty-day removal period under 28 U.S.C. § 1446(b). In *Baratt*, the plaintiff's process server served a summons with notice on a part-time receptionist at the defendant's company on December 9, 1991. The receptionist's duties included greeting people who came to the office, typing, opening mail, answering phones, and reviewing the completeness of insurance applications. On January 23, 1992, plaintiff served a copy of the summons with notice on the New York State Insurance Department, which defendant received on January 27, 1992. On January 30, 1992, defendant removed the case from state court [*18] to federal court. Plaintiff sought to remand the case arguing the thirty-day time period to file a notice of removal began on December 9, 1991, when service was made upon the receptionist. Defendant argued its removal notice was timely because the thirty-day removal period did not begin to run until it received the properly served summons on January 27, 1992. The court reasoned "the through service or otherwise" language in § 1446(b) "was not intended to diminish the right to removal by permitting a plaintiff to avoid state service requirements." *Baratt, 787 F. Supp. at 336*. The court also noted the "'or otherwise' language of section 1446(b) was not intended to permit a plaintiff to substitute informal or improper service for the traditional requirements of personal service." *Id. at 337*.

More recently, in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999)*, the Supreme Court addressed a slightly different issue that sheds light on the commencement of the thirty-day removal period in § 1446(b). The issue before the Court in *Murphy Bros.* was whether the named defendant must be officially summoned to appear in the action before the time to remove begins, or does the [*19] thirty-day period start earlier, on the named defendant's receipt, before service of official process, of a courtesy copy of the filed complaint faxed by plaintiff's counsel. On January 26, 1996, the plaintiff had filed a complaint in state court for breach of contract and fraud. Three days later, on January 29, plaintiff faxed a courtesy copy of the file-stamped complaint to one of the defendant's vice presidents. It was not until February 12, 1996, that plaintiff officially served defendant under local law by certified mail. The defendant removed the case to federal court on March 13, 2006, thirty days after service and forty-four days after receiving the faxed courtesy copy. The Court held that a defendant's time to remove is triggered by simultaneous service of the summons and complaint. *Murphy Bros., 526 U.S. at 347-48*. In reaching this conclusion, the Court read Congress's provisions for removal in light of the

following bedrock principal: "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and *brought under a court's authority, by formal process." Id. at 347* (emphasis added). Service of process, the Court noted, [*20] is fundamental to any procedural imposition on a named defendant under a longstanding tradition in our system of justice. *Id. at 350.* "In the absence of service of process . . . a court ordinarily may not exercise power over a party the complaint names as a defendant." *Id.* Service of the summons is the mechanism by which a court asserts jurisdiction over the person of the party served. *Id.* "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.*

The facts of *Barrat* are indistinguishable from this case, and the Supreme Court's reasoning in *Murphy Bros.* is equally compelling. In California, a court obtains jurisdiction over a party "from the time the summons is *served upon him as provided by Chapter 4." Cal. Code Civ. Proc. § 410.50* (emphasis added). As previously determined, Plaintiff did not serve EMPI as provided under California Code of Civil Procedure *§ 416.10* (a section in Chapter 4), the statute for effecting service upon a corporation. Instead of serving the Original Complaint and summons on a person authorized [*21] by law to receive service under *§ 416.10*, Plaintiff served Masanz, a low-level medical billing assistant and an individual not authorized to receive service under California law or with EMPI's authorization. Consequently, under *Barrat* and *Murphy Bros.*, the thirty-day period for EMPI to remove this case to federal court began to run on June 1, 2007, when EMPI's counsel Kristoff, was properly served with a copy of the FAC and summons. Thirty days after June 1, 2007, was July 1, 2007, a Sunday. Therefore, EMPI had until Monday, July 2, 2007, to file a timely notice of removal, which it did. *See Fed. R. Civ. P. 6 (a) (3).*

2. Factual Sufficiency of EMPI's Notice of Removal.

Plaintiff contends EMPI's Notice of Removal should be rejected because there is no admissible evidence before the court to establish Davis's citizenship. Plaintiff maintains the Notice of Removal and Zimmerman Declaration both fail to establish Davis's citizenship and refute the allegation in Plaintiff's FAC that Davis is a California citizen. Plaintiff also argues EMPI is not entitled to amend the Notice of Removal or provide additional evidence of Davis's citizenship in its opposition to Plaintiff's Motion to Remand. [*22] In support of her position, Plaintiff cites two Ninth Circuit cases, *Sanchez v. Monumental Life Ins. Co. 102 F.3d 398 (9th Cir. 1996),* and *Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992),* and two unpublished cases from the Northern District of California, *Kanaan v. Freescale Semiconductor, Inc., 2007 U.S. Dist. LEXIS 11736, 2007 WL 420241 (N.D. Cal. 2007),* and *Henry v. Emery Worldwide, 2003 U.S. Dist. LEXIS 2767, 2003 WL 715899 (N.D. Cal. 2003).* Plaintiff cites these cases for the proposition that the notice of removal statute is strictly construed, and that a defendant cannot amend or supplement a previously filed notice of removal.

EMPI contends the court may consider supplemental evidence provided in its opposition to Plaintiff's Motion to Remand for purposes of curing any defect in the original Notice of Removal.

It is well-settled that the notice of removal statute is strictly construed. *Gaus, 980 F.2d at 566.* However, the cases Plaintiff cite do not support her position that a defendant cannot amend or supplement a previously filed notice of removal. Plaintiff would have the court unduly "exalt form over substance and legal flaw-picking over the orderly disposition of cases

properly committed to federal courts." *Barrow Dev. Co., Inc. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969).*

*Gaus* [*23] does not help Plaintiff. In *Gaus*, the defendant made an unsupported allegation in its notice of removal that the amount in controversy exceeded $ 50,000. *Gaus, 980 F.2d at 567.* The defendant stated "the matter in current controversy . . . exceeds the sum of $ 50,000." *Id. Gaus* found this allegation was insufficient for removal of the case from state court because no underlying facts supported the allegation. *Id.*

*Sanchez* is another amount in controversy case. In *Sanchez*, the court held that the defendant failed to meet the amount in controversy requirement. *Sanchez, 102 F.3d at 404-06.* The amount in controversy requirement at the time was $ 50,000. *Id. at 405.* The defendant alleged contract damages of $ 12,500, and also cited *California Civil Code § 3345*, which permitted the trebling of damages, bringing the amount in controversy to $ 50,000. *Id.* The defendant argued that because plaintiff's non-contract claims for relief exceeded $ 0.00, the amount in controversy requirement had been met. *Id.* The court concluded, however, that the defendant's calculation of the amount in controversy was "entirely premised on a misinterpretation of [the statute permitting the trebling of damages,]" and had [*24] therefore failed to meet its burden of proof. *Id.* Plaintiff also had a claim to force the disgorgement of profits from the defendant. *Id.* The court concluded that the defendant "provided us with absolutely no evidence which would allow us to determine the extent of the loss which it might incur if an injunction is granted forcing it to disgorge the premiums." *Id.* In *Sanchez*, the case was remanded to state court because defendant misinterpreted the applicability of the trebling statute and failed to provide any evidence of loss it might incur. *Id.*

*Kanaan* involved an employment dispute where the citizenship of the parties was at is-

sue. *Kanaan, 2007 U.S. Dist. LEXIS 11736, 2007 WL 420241 at *1.* The facts of *Kanaan* are straightforward. Plaintiff was a California resident when the defendant solicited him to apply for a position reporting to one of the defendant's senior vice presidents. *Id.* The defendant was a Delaware corporation with its principal place in Texas. *Id.* Plaintiff accepted a position with the defendant and resigned his current position in California. *Id.* Shortly before commencing his employment with the defendant, the plaintiff learned that the vice president he would be reporting to was being replaced. [*25] *Id.* Plaintiff was told that he would still have a job, although the exact title and responsibilities were not certain. *Id.* Based on these assurances, plaintiff alleged he put his home in California up for sale and moved his family to Texas. *Id.* Plaintiff began working for the defendant but was terminated several months later. *Id.* Plaintiff filed suit in the Superior Court of California for San Francisco County for promissory fraud, intentional and negligent infliction of emotional distress, negligent misrepresentation, and a violation of the California Labor Code. *Id.* The defendant removed the case to federal court alleging diversity of citizenship. *Id.* The defendant alleged that it was a Delaware corporation with its principal place of business in Texas. *Id.* The defendant alleged on information and belief that plaintiff was a California citizen based on the fact that plaintiff had alleged in his complaint that he "at all relevant times mentioned herein was a resident of the State of California." *Id.* The plaintiff moved to remand contending at the time the complaint was filed he had been living with his family in Texas where he had purchased a home, he was actively seeking employment [*26] in Texas, and it was his intention to remain in Texas. *2007 U.S. Dist. LEXIS 11736, [WL] at *2.* The court determined that the complaint did not adequately allege plaintiff's citizenship, and that it also indicated plaintiff had moved to Texas. *Id.* The plaintiff submitted a declaration stating that he

moved to Texas from California to accept a position with the defendant, that he purchased a home in Texas, that he was actively seeking employment in Texas, that he intended to remain in Texas, and that his children were enrolled in Texas schools. *2007 U.S. Dist. LEXIS 11736, [WL] at *3.* Because defendant offered no evidence to rebut plaintiff's declaration or to support its allegation that plaintiff was a California citizen, the court remanded the case to state court. *Id.*

*Henry* is a wrongful discharge case where the issue was the defendant's principal place of business. *Henry, 2003 U.S. Dist. LEXIS 2767, 2003 WL 715899 at *1.* In its notice of removal, the defendant stated (1) that the amount in controversy was satisfied because the plaintiff sought emotional distress damages in excess of $ 500,000, and (2) that the defendant was not a citizen of California, plaintiff's state of citizenship. *Id.* The defendant was a Delaware corporation, which left only the issue whether its [*27] principal place of business was in a state other than California, i.e., whether the defendant had a "substantial predominance" of its business activities in a state other than California. *2003 U.S. Dist. LEXIS 2767, [WL] at *2.* Defendant conceded its "nerve center" was in California. *Id.* The court held that the defendant failed to meet its burden of showing that a "substantial predominance" of its business activities were in a state other than California, and remanded the case to state court. *2003 U.S. Dist. LEXIS 2767, [WL] at *5.* The court found, *inter alia,* that the defendant failed to provide evidence regarding the location of 56% of its workforce, how many of its employees interacted with the public, the amount of freight shipped to and from various states in which it did business, the real property it owned, its sources of income, or where its sales took place. *2003 U.S. Dist. LEXIS 2767, [WL] at *3-4.* In *Henry,* the defendant provided some evidence, but failed to provide sufficient relevant evidence of residence to enable the court to perform a meaningful analysis under the substantial predominance of business test.

By contrast, determining the citizenship of an individual is, generally, a less arduous task than determining the citizenship of a large corporation [*28] doing business nationally. Here, EMPI has provided substantial factual evidence regarding Davis's citizenship through the Zimmerman and Davis Declarations.

*Sinclair, Gaus, Kanaan,* and *Henry* do not stand for the proposition that a defendant cannot amend or supplement a previously filed notice of removal. The common thread of these cases is the defendant's failure to provide any evidence regarding the amount in controversy or the citizenship of a particular party. Here, by contrast, EMPI stated in its notice of removal that Davis was a citizen of Missouri because he resided there. Unlike the defendants in *Gaus, Sanchez, Kanaan, and Henry,* EMPI provided the following evidence that Davis was a Missouri citizen: (1) the Zimmerman Declaration, which states "According to the personnel records maintained by EMPI in the ordinary course of its business, Larry Davis's home residence was changed from California to Missouri on June 19, 2006, based on his communication to EMPI that he moved his home residence to Missouri[;]" and (2) the Davis Declaration that states that in May 2006 he sold his residence at 2914 Sommer Star Road in Placerville, California, that he bought a residence at 78 Harbor [*29] View Drive in Reeds Spring, Missouri, that he intended to remain in Missouri indefinitely, that he registered to vote and obtained a driver's license in Missouri, that he paid Missouri state income taxes in 2007, and that he currently resides in Missouri. EMPI's evidentiary submissions are sufficient to support its removal notice.

Plaintiff's argument that EMPI is not entitled to amend its notice of removal or provide additional evidence of Davis's citizenship after the time period expired for filing a notice of removal ignores the Ninth Circuit's *Barrow* de-

cision. In *Barrow*, the court held that allegations in a removal notice that are defective in form, but not so lacking in substance, may be amended. *Barrow, 418 F.2d at 318*. The court held that allowing amendment of a formally defective removal notice that is not lacking in substance is the majority view. *Id.* The Barrow court also specifically rejected the rigid formality Plaintiff suggests should be followed here, to strictly construe the notice of removal statute to prevent supplementation or amendment. *Id.* The Davis Declaration merely supplements EMPI's notice of removal. EMPI's notice of removal was not so lacking in substance [*30] that it could not be amended or supplemented with the information contained in the Davis Declaration. ³ The *Barrow* court also held that *28 U.S.C. § 1653* applies to removed actions as well as actions initiated in United States District Courts. *Id. at 317. Section 1653* provides: "Defective allegations of jurisdiction may be amended upon terms, in the trial or appellate courts." *28 U.S.C. § 1653*. ⁴ Plaintiff has offered no evidence to rebut the Zimmerman Declaration and the Davis Declaration. Plaintiff's argument rests solely on an allegation in the FAC to establish Davis's citizenship in California. Through EMPI's notice of removal, the Zimmerman Declaration, and the Davis Declaration, EMPI has met its burden to provide substantial evidence which overcomes Plaintiff's assertion that Davis is a California citizen.

---

3    Plaintiff objects that EMPI filed Davis's declaration in conjunction with its opposition to Plaintiff's Motion to Remand rather than with its notice of removal. At the hearing on Plaintiff's Motion to Remand, counsel for EMPI satisfactorily explained the delay in obtaining and submitting Davis's declaration. EMPI no longer employed Davis as of November 2006 and had no control [*31] over him at the time this lawsuit was filed in state court and when EMPI filed its notice of removal on July 2,

2007. Counsel for EMPI explained it was difficult to reach Davis while they were preparing the notice of removal, and Davis was unaccessible two days before the thirty-day limit on filing a notice of removal would have expired.

4    *Section 1653* was enacted in 1948 and has never been amended.

### 3. Complete Diversity of the Parties.

Plaintiff contends diversity of citizenship is absent between Plaintiff, EMPI, and Davis. Plaintiff argues all parties are California citizens. EMPI argues the parties are completely diverse as Plaintiff is a citizen of California, EMPI is a citizen of Minnesota, and Davis is a citizen of Missouri. Plaintiff's California citizenship is not disputed.

"Subject matter jurisdiction based upon diversity of citizenship requires that no defendant have the same citizenship as any plaintiff." *Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001)*.

#### a. Diversity as to EMPI

"In determining whether there is diversity between corporate parties, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the [*32] State where it has its principal place of business." *Id.* (citing *28 U.S.C. § 1332(c)*) (internal quotations omitted). "Thus, corporations are citizens of both the state where they are incorporated and the state where they have their principal place of business." *Id.*

"Federal courts generally use one of two tests to determine a corporation's principal place of business." *Tosco, 236 F.3d at 499*. "First, the 'place of operations test' locates a corporation's principal place of business in the state which 'contains a substantial predominance of corporate operations'." *Id.* (citing *Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir.1990))*. "Second, the 'nerve center test' locates a corporation's principal

place of business in the state where the majority of its executive and administrative functions are performed." *Tosco, 236 F.3d at 499* (citing *Industrial Tectonics, 912 F.2d at 1092-93*).

The Ninth Circuit uses a hybrid approach to determine where a corporation's principal place of business is located. The "total activities" or "hybrid test" is as follows:

> Where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal [*33] place of business, even if the corporate headquarters are located in a different state. The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities.

*Industrial Tectonics, 912 F.2d at 1094.*

Plaintiff's assertion that EMPI is a citizen of California is unfounded. 5 Plaintiff's FAC only states "EMPI, Inc., is a corporation doing business in the State of California, and doing business in the County of Fresno" and is devoid of facts to determine EMPI's true citizenship. Plaintiff has not provided any additional evidence to determine EMPI's citizenship other than alleging its state of incorporation. In any event, "the burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999)* (citing *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)*). Here, that party is EMPI.

> 5    Plaintiff's argument the Zimmerman Declaration lacks foundation, contains inadmissible hearsay, and contains conclusory allegations, rendering the Notice

of Removal ineffective [*34] lacks merit and is not repeated here.

EMPI has provided clear, convincing, and uncontroverted evidence that it is a citizen of Minnesota. The Zimmerman Declaration, the Supplemental Zimmerman Declaration that contains EMPI's articles of incorporation, and Plaintiff's request for judicial notice of EMPI's registration with the California Secretary of State unquestionably establish EMPI is incorporated under the laws of the State of Minnesota. If EMPI's principal place of business is in California, complete diversity will not exist.

EMPI's principal place of business is in Minnesota. EMPI manufactures and sells medical devices. The Supplemental Zimmerman Declaration, which Plaintiff does not refute, indicates the bulk of EMPI's workforce is based in Minnesota. EMPI employs approximately 988 individuals. EMPI's Minnesota office has 443 employees, or approximately 44.8% of its workforce. EMPI's South Dakota Manufacturing centers have 149 employees, or approximately 15.1% of its workforce. EMPI's Kentucky office has 83 employees, or approximately 8.4% of its workforce. EMPI's Florida office has 4 employees, or 0.4% of its workforce. The remaining 232 employees sell EMPI products throughout [*35] the United States. Of these 232 salespeople, only 14 are based in California, or approximately 6% of its salesforce and 1.4% of EMPI's entire workforce. These numbers establish that a substantial predominance of EMPI's business activities are conducted in Minnesota. EMPI's principal place of business is Minnesota. EMPI's citizenship for diversity jurisdiction purposes is Minnesota.

It is unnecessary to analyze the company's citizenship under the "nerve center" test. Assuming, *arguendo*, no state contained a substantial predominance of EMPI's business activities, EMPI would also be a citizen of Minnesota under the nerve center test. EMPI exercises day-to-day control of its entire business

from its corporate headquarters in Minnesota, nearly all of EMPI's executives maintain their offices in Minnesota, EMPI's administrative and financial offices are in Minnesota, and EMPI keeps and maintains its records at its Minnesota headquarters.

b. Diversity as to Davis.

Federal district courts are vested with original jurisdiction over matters in controversy between "citizens of different States." *28 U.S.C. § 1332(a)(1)*. The determination of a litigant's state citizenship for purposes of *section 1332(a)(1)* [*36] is controlled by federal common law, not by the law of any state. *Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983)*. "To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state." *Id.*

*Section 1332*--the diversity jurisdiction statute--"speaks of citizenship, not of residency." *Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)*. "To be a citizen of a state, a natural person must first be a citizen of the United States." *Id.* "The natural person's state citizenship is then determined by her state of domicile, not her state of residence." *Id.* A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* An individual's manifestation of intent to remain in a location is gauged by various objective factors including where the individual resides, is employed, has assets, is registered to vote, seeks medical treatment, has a driver's license, banks, and pays state taxes. *See, e.g., Altimore v. Mount Mercy Coll., 420 F.3d 763 (8th Cir. 2005)*.

EMPI has provided, clear, convincing, and uncontroverted [*37] evidence that Davis is a citizen of Missouri. The Notice of Removal states Davis is now, and was at the time Plaintiff commenced this case, a citizen of Missouri

because he resides and is domiciled there. Davis used to work for EMPI as its vice president of sales, which required him to travel throughout the United States. Davis Decl. P 2. In November 2006, Davis severed his employment with EMPI. *Id.* However, while Davis was still employed with EMPI, he decided to move to Missouri because it was easier, in terms of work-related travel, to be centrally located. *Id.* at P 3. In May 2006, approximately ten months before Plaintiff filed her Original Complaint, Davis sold his former California residence located at 2914 Sommer Star Road, in Placerville. *Id.* at P 4. In June 2006, Davis moved to Missouri and bought a house located at 78 Harbor View Drive, in Reed Springs, Missouri, where he presently resides. *Id.* Upon moving to Missouri, Davis registered to vote, obtained a Missouri driver's license, and paid Missouri state taxes in April 2007. *Id.* Davis also has family ties to Missouri. *Id.* Davis's mother and father live in Missouri, and his daughter and her family moved to Missouri around [*38] the same time Davis moved in June 2006. *Id.* at PP 3-4. These uncontroverted facts clearly establish Davis has planted his roots in Missouri and intends to remain there.

Plaintiff's argument that Davis is a California citizen is not supported by the record. The only evidence Plaintiff provides to establish Davis's citizenship is the declaration of Jesse Zuniga ("Zuniga Declaration"), a private investigator. The activity report attached to the Zuniga Declaration contains Davis's California driver's license number, which was issued in 1997 and was most recently renewed in May 2006; his social security number; and an address of a piece of real property located at 5101 Newton Road, Placerville, CA. The Zuniga Declaration indicates Davis owned property located at 5101 Newton Road in Placerville. Plaintiff provides no evidence Davis ever resided at this property, and Davis states in his own declaration that he bought the Newton Road property as an investment in September 2004 and sold it in January 2007, three months

before Plaintiff initiated this lawsuit. Plaintiff has not provided any credible evidence indicating Davis is a citizen of California. In fact, Plaintiff's evidence supports EMPI's [*39] assertion that Davis is a Missouri citizen. Curiously, the Zuniga Declaration also lists the address of Davis's current residence at 78 Harbor View Drive in Reed Springs, Missouri. Davis is a citizen of Missouri. Complete diversity exists as Plaintiff is California citizen, EMPI is a Minnesota citizen, and Davis is a Missouri citizen.

4. Amount in Controversy Requirement.

Plaintiff contends the court lacks subject matter jurisdiction in this case because the FAC does not set forth the amount of damages Plaintiff seeks and EMPI has failed to establish that the jurisdictional amount exceeds $ 75,000, exclusive of interest and costs. Plaintiff also contends EMPI's counsel's declaration fails to establish the amount in controversy exceeds $ 75,000 based on the fact that Plaintiff's counsel would not stipulate that Plaintiff's damages were less than $ 75,000. EMPI argues based on the nature of the allegations in the FAC and the damages sought, Plaintiff has placed in controversy an amount exceeding $ 75,000, exclusive of costs and interest.

Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interests and costs . . . ." *28 U.S.C. § 1332(a)*. [*40] In removal cases, the amount in controversy is determined based on the plaintiff's complaint at the time that the notice of removal is filed. *See Meritcare, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999)* (stating "the amount in controversy is measured as of the date of removal, a practice similar to that in original jurisdiction suits where the inquiry is directed to the time when the complaint is filed."), abrogated on other ground by *Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)*; *see also Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S. Ct. 347, 83 L. Ed. 334 (1939)* (stating defendant's right to remove "was to be determined according to the plaintiffs' pleading at the time of the petition for removal."). In removal cases, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *Gaus v. Miles, 980 F.2d 564 at 566.*

"The 'strong presumption' against removal jurisdiction means that the defendant always bears the burden of establishing that removal is proper." *Id.* The burden of proof is on EMPI, as the removing party, to demonstrate by a preponderance [*41] of the evidence that the amount in controversy exceeds $ 75,000. *Guglielmino v. McKee Foods Corp., 506 F.3d 696, [slip op.] at 13580 (9th Cir. 2007).* In cases where the state court complaint is silent or unclear as to the amount of damages sought by the plaintiff, the defendant must prove that the amount in controversy exceeds $ 75,000. *Gaus, 980 F.2d at 567.* The defendant may prove that the amount in controversy exceeds $ 75,000 in one of two ways: "(1) by demonstrating that it is facially apparent that the claims are likely above $ 75,000, or (2) by setting forth the *facts* in controversy-preferably in the removal petition, but sometimes by affidavit-that support a finding of the requisite amount." *Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999)* (emphasis in original) (citing *Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).*

Plaintiff's FAC seeks an unspecified total amount of special, general, compensatory, and punitive damages, and attorney's fees. The FAC contains six causes of action for violation of *California Government Code § 12940, et seq.* for unlawful employment practices including the prohibition of discrimination, harassment, and retaliation [*42] in employment on the basis of sex; sexual battery; termination in violation of public policy; breach of employment contract and wrongful termination; failure to

pay wages due and owing; and waiting time penalties.

The prayer for relief seeks damages for loss of wages, earnings, salary, bonuses and other employment benefits; for loss of future wages, earnings, salary, bonuses, and benefits; for interest under *California Civil Code § 3291*; general damages for emotional and mental distress; general damages for physical personal injury; consequential damages arising out of the violation of Plaintiff's statutory rights and for termination of Plaintiff; general damages for pain and suffering, including emotional distress; punitive damages; and attorney's fees and costs. Plaintiff's failure to pay wages cause of action permits the award of attorney's fees under *California Labor Code sections 218.5* and *1194.*

The face of the FAC establishes that Plaintiff is seeking damages in excess of $ 75,000. Plaintiff alleges EMPI breached its employment contract with her by refusing to pay her approximately $ 30,000 in earned wages and commissions. FAC P 39. As Plaintiff has put at least $ 30,000 at issue, [*43] it must be determined if the remaining causes of action support damages totaling more than $ 45,000. Plaintiff has alleged Davis made numerous unwanted sexual advances, lewd and salacious suggestions, and unwanted physical contact, including sexual battery. Davis compelled Plaintiff to engage in sexual relations with him, Davis grabbed Plaintiff's buttocks and breasts, and Davis informed Plaintiff if she engaged in sexual activity with him he would improve the terms and conditions of her employment with EMPI. When Plaintiff refused to engage in sexual activity with Davis, he would verbally abuse her, make unwarranted criticisms of job performance, and would assert his influence over Plaintiff's compensation and continued employment with EMPI. Plaintiff alleges she complained to supervisors, who did nothing to stop the sexual harassment. Plaintiff was termi-

nated on July 6, 2006. Plaintiff also alleges EMPI terminated her for complaining about EMPI's refusal to pay her wages.

Plaintiff levels serious allegations of workplace misconduct against EMPI and Davis. Excluding the $ 30,000 for wages and commissions due, the face of the FAC more than adequately alleges over $ 45,000 in damages. [*44] Davis is alleged to have mentally, verbally, physically, and sexually harassed Plaintiff, and requested that Plaintiff engage in sexual favors in return for an improvement of the terms and conditions of her employment. Such conduct, if proven, would give rise to compensatory and punitive damages, without considering attorney's fees, in excess of $ 45,000. These damages, plus the damages of $ 30,000 for past wages and commissions, exceed $ 75,000. Additionally, counsel for Plaintiff conceded that the amount in controversy was not at issue at the hearing on Plaintiff's Motion to Remand.

Plaintiff's Motion to Remand is DENIED.

D. Plaintiff's Request for Costs and Attorney's Fees.

EMPI properly removed this case from state court to this court. Plaintiff is not entitled to attorney's fees under *28 U.S.C. § 1447(c)*.

V. Conclusion.

For all the reasons stated above, Plaintiff's Motion to Strike the Zimmerman Declaration is DENIED, and Plaintiff's Motion to Remand to state court is DENIED.

**IT IS SO ORDERED.**

**Dated: February 28, 2008**

/s/ Oliver W. Wanger

**OLIVER W. WANGER**

**UNITED STATES DISTRICT JUDGE**

LEXSEE 2008 U.S. DIST. LEXIS 41012

**LARRY BASSEL and BARBARA BASSEL, Plaintiffs, v. 4ACCESS COMMUNICATIONS CO., Defendant.**

**Civil No. 07cv2346-L(JMA)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 41012*

**May 21, 2008, Decided**
**May 21, 2008, Filed**

**COUNSEL:** [*1] For Larry Bassel, Barbara Bassel, Plaintiffs: Barbara M Frezza, LEAD ATTORNEY, Law Office of Barbara M Frezza, La Jolla, CA.

For 4Access Communications CO, Defendant: Jeffrey S. Renzi, LEAD ATTORNEY, Squire Sanders & Dempsey, Los Angeles, CA.

**JUDGES:** M. James Lorenz, United States District Court Judge.

**OPINION BY:** M. James Lorenz

**OPINION**

**ORDER GRANTING MOTION TO REMAND; DENYING AS MOOT REQUEST FOR RECONSIDERATION and DENYING MOTION FOR COSTS AND EXPENSES [doc # 9]**

Plaintiffs move to remand the above-captioned case from the State of California, County of San Diego Superior Court. Plaintiffs contend the notice of removal is untimely and defendant has failed to demonstrate the amount in controversy meets the requirement of *28 U.S.C. § 1332(a).* [doc # 9] The motion has

been fully briefed. For the reasons set forth below, the case will/will not be remanded.

**1. Legal Standard for Removal and Remand**

Plaintiffs filed their complaint in the San Diego Superior Court on October 2, 2007 alleging breach of contract, conversion, violation of *California Labor Code § 201* and *California Business and Professions Code § 17200.* Defendant removed the action on the basis of diversity jurisdiction on December 17, 2007.

The federal court is [*2] one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. of N.Y., 790 F.2d 769, 774 (9th Cir. 1986).* It possesses only that power authorized by the Constitution or a statute. *See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986).* It is constitutionally required to raise issues related to federal subject matter jurisdiction, and may do so *sua sponte. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); see Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).*

Removal jurisdiction is governed by *28 U.S.C. § 1441 et seq.* The burden of establish-

ing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 712 n.3 (9th Cir. 1990).* "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).*

A state court action can only be removed if it could have originally been brought in federal court. *Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).* In [*3] addition to jurisdiction on the basis of a federal question, a federal court has jurisdiction over an action involving citizens of different states and the amount in controversy exceeds $ 75,000.00. *28 U.S.C. § 1332.* [1]

> 1   *Section 1332(a)(1)* provides, in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between ... citizens of different States."

Even if the Court has subject matter jurisdiction over the state court action, remand may be based upon a defendant's failure to comply with the procedural requirements of removal.

**3. Discussion**

**a. Timeliness of Removal**

Plaintiffs first argue that defendant did not timely remove the action. *28 U.S.C. § 1446(b)* provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court [*4] and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by *section 1332* of this title more than 1 year after commencement of the action.

*28 U.S.C. § 1446(b)*

In their reply, plaintiffs appear to have abandoned their argument that defendant's removal was not timely. Instead, plaintiffs focus on whether defendant has established the Court's diversity jurisdiction in this case.

**b. Diversity Jurisdiction re: Amount in Controversy**

Plaintiffs contend defendant has failed to demonstrate by a preponderance of the evidence that plaintiffs meet the $ 75,000 amount in controversy requirement of *28 U.S.C. § 1332* to confer jurisdiction on this Court.

Where the amount in controversy is unclear from the face of plaintiff's complaint, the Ninth Circuit has held that "the defendant [*5] bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional

amount.'" *Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403 (9th Cir. 1996)* (quoting *Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992))*. Specifically, "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the statutory minimum]." *Id. at 404*; *see also Abrego Abrego v. Dow Chemical Co. et al., 443 F.3d 676, 682-86 (9th Cir. 2006)*.

Defendant may prove that the amount in controversy exceeds $ 75,000 in one of two ways: "(1) by demonstrating that it is facially apparent that the claims are likely above $ 75,000, or (2) by setting forth the facts in controversy -- preferably in the removal petition, but sometimes by affidavit -- that support a finding of the requisite amount." *Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999)*(citing *Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)*).

Plaintiffs' Complaint seek an unspecified total amount of special, general and compensatory [*6] damages; restitution and disgorgement of profits, exemplary and punitive damages; prejudgment interest; and attorney's fees under Labor Code § 218.5. Defendant states that "common sense dictates that there is a legal certainty that Plaintiffs' claims will exceed $ 75,000." (Opp. at 3). Defendants then note that plaintiffs' first cause of action for breach of contract exceeds $ 25,000.00 in damages based on the state jurisdictional requirement; the third cause of action for fraud seeks $ 8,000.00 plus punitive damages; and the fifth cause of action for conversion seeks damages of $ 1,031.38. These claims do not meet the $ 75,000.00 amount in controversy requirement. Defendants note that the second cause of action alleging violation of Labor Code § 201 seeks compensatory damages for wages, including salary, vacation pay and bonus, and statutory penalties, prejudgment interest and attorneys' fees. But de-

fendants do not attempt to compute what those damages may be even though the compensatory damages alone should be relatively easy to calculate. Similarly, plaintiffs' sixth cause of action seeks disgorgement and restitution under Business & Professions Code § 17200. Defendants do not [*7] provide any calculation for those figures. Merely contending that common sense dictates all of plaintiffs' claims in the aggregate exceed $ 75,000 is not evidence by which defendants can establish the requisite jurisdictional amount.

Defendant also argues that plaintiffs refused to stipulate that their claims do not exceed $ 75,000. But plaintiffs' refusal to so stipulate is insufficient to establish the amount in controversy. "[S]ince a defect in subject matter jurisdiction cannot be stipulated to or waived, attempting to force the plaintiff to enter a stipulation regarding the potential amount of damages would serve no effect in determining the actual amount in controversy at the time of removal." *Conrad Associates v. Hartford Accident & Indemnity, Co., 994 F. Supp. 1196, 1199 (N.D. Cal. 1998)*. The burden is on defendant, not the plaintiffs, to prove the amount in controversy. If a plaintiff's refusal to stipulate is sufficient to satisfy that burden, a defendant could force the plaintiff to choose between stipulating against his or her future remedies and remaining in federal court. Defendant has not provided any authority to support its position that plaintiffs' failure to stipulate [*8] to the jurisdiction amount meets defendants' burden of proving by a preponderance of the evidence that the $ 75,000 amount in controversy requirement has been met.

Defendants have not shown by a preponderance of the evidence that the amount-in-controversy requirement is met in this action. Accordingly, diversity jurisdiction does not support this Court's subject matter jurisdiction over this case and the action will be remanded to the San Diego Superior Court.

**c. Timeliness of Motion to Remand**

In its opposition, defendant contends plaintiff's motion to remand was not timely: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under *section 1446(a)*." *28 U.S.C. § 1447(c).*

Plaintiffs initially filed their motion for remand on January 16, 2008 -- 30 days after defendant filed its notice of removal. But plaintiffs' motion was stricken from the record for various procedural errors. (Discrep. Order filed January 17, 2008 [doc. # 8].) Plaintiffs filed a corrected version of their motion to remand on January 18, 2008. Defendant asks the Court to find plaintiffs' motion untimely [*9] in this circumstance. The Court declines to do so. Plaintiffs' difficulties occurred because they failed to correctly comply with the Electronic Case Filing Administrative Policies and Procedures Manual ("ECF"). Had the motion and supporting documents been in compliance with the ECF, their motion would have been timely under *28 U.S.C. § 1447(c).* The record demonstrates plaintiffs' intent to have their motion filed on January 16, 2008. Although a party is required to be aware of and to comply with the Federal Rules of Civil Procedure, the Civil Local Rules and this district's recent ECF, there is no showing that plaintiffs filing was made in bad faith or in a manner intended to violate the Court's rules. Accordingly, defendant's contention that the Court should deny plaintiffs' motion to remand for untimeliness is rejected. Plaintiffs' request for reconsideration of the Court's discrepancy order striking their initial motion for remand is denied as moot.

### d. Attorneys' Fees and Costs

Plaintiffs argue that an award of attorney's fees is appropriate. Defendant responds that even if plaintiffs' motion for remand is granted, an award of fees and costs is inappropriate because there were objectively [*10] reasonable grounds for removal at the time defendant filed its petition.

When a district court grants a motion to remand, it has wide discretion to "require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." *28 U.S.C. § 1447(c); Moore v. Permanente Med. Group. Inc., 981 F.2d 443, 447 (9th Cir. 1992).* The Court exercises its discretion here to deny fees and costs. Although it is true that defendant did not demonstrate the amount in controversy requirement, its position was arguably colorable and there is no evidence that the removal was in bad faith or for the purpose of delaying proceedings.

### Conclusion

Based on the foregoing, plaintiffs' motion to remand is **GRANTED**. Plaintiffs' request for attorneys' fees and costs is **DENIED**. The Clerk of the Court is directed to return this action to the State of California, Superior Court for the County of San Diego, case number 37-2007-76081-CU-OE-CTL.

### IT IS SO ORDERED.

DATED: May 21, 2008

/s/ M. James Lorenz

M. James Lorenz

United States District Court Judge

# EXHIBIT E

9 Trials Digest 11th 13 (Cal.Superior), 2008 WL 496470

Copyright (c) 2008 Thomson/West

Superior Court, Los Angeles County, California.

Kolas vs. Access Business Group LLC

TOPIC:
Synopsis: Workplace injury leads to wrongful termination
Case Type: Labor & Employment; Termination/Constructive Discharge; Labor &
Employment; Disability/Medical Condition; Labor & Employment; Age; Labor &
**Employment**; **Discrimination**; Labor & Employment; Retaliation; Labor & Employment;
Workplace Injury; Labor & Employment; Workers Compensation

DOCKET NUMBER: BC362432

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: January 14, 2008.

JUDGE: Michael C. Solner

ATTORNEYS:
Plaintiff: Maryann P. Gallagher, Law Offices of Maryann P. Gallagher, Los Angeles.
Defendant: Maria K. Aarvig, Creason & Aarvig, Riverside; Danielle K. Little,
Creason & Aarvig, Riverside; Hector C. Perez, Creason & Aarvig, Riverside.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $600,000

Range: $500,000-999,999

 $175,000 past lost earnings; $225,000 future lost earnings; $200,000 non-economic
damages. The jury determined that plaintiff's **disability** and age and the fact that
plaintiff filed a workers' compensation claim were motivating reasons for
defendant's decision to fire plaintiff.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:
Plaintiff: Not reported.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: Plaintiff Boris Kolas was employed by defendant Alticor
Inc., erroneously sued as Access Business Group LLC, for more than nine years as a
calibration technician. His job involved assuring that all of the equipment that
measured weight, temperature, and other aspects of the vitamins and food
supplements manufactured by defendant were proper in terms of the measurement taken
and the documentation to prove that they were accurate.
Plaintiff alleged he was fired because of his age and/or because he was injured on
the job. Plaintiff said he sustained a herniated disc while working.
Defendant contended that he was fired because audits done before the injury showed
plaintiff was not doing his work properly and was subjecting the company to
regulatory problems.

CLAIMED INJURIES
According to court records:
**Emotional distress.**

CLAIMED DAMAGES
According to court records:
$112,500 past lost income; $525,000 future lost income; $1,000,000
emotional distress.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on November 27, 2006.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Downtown

9 Trials Digest 11th 13 (Cal.Superior), 2008 WL 496470

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

49 Trials Digest 10th 7                                                    Page 1

49 Trials Digest 10th 7 (Cal.Superior), 2007 WL 4339112

Copyright (c) 2008 Thomson/West

Superior Court, San Francisco County, California.

Lopez vs. Bimbo Bakeries USA Inc.

TOPIC:
Synopsis: Bakery fires delivery driver because of pregnancy
Case Type: Labor & **Employment; Discrimination;** Labor & Employment;
**Disability**/Medical Condition; Labor & Employment; Gender; Labor & Employment;
Retaliation; Labor & Employment; Harassment-Sexual; Labor & Employment; Violation
of Public Policy; Intentional Torts; Infliction of **Emotional Distress**

DOCKET NUMBER: CGC05445104

STATE: California
COUNTY: San Francisco

Verdict/Judgment Date: June 21, 2007

JUDGE: Ronald Quidachay

ATTORNEYS:
Plaintiff: Daniel L. Feder, Law Offices of Daniel L. Feder, San Francisco;
Christopher R. LeClerc, Law Offices of Daniel L. Feder, San Francisco.
Defendant: E. Joseph Connaughton, Paul, Plevin, Sullivan & Connaughton, San Diego;
Melissa Listug Klick, Paul, Plevin, Sullivan & Connaughton, San Diego; Wendy M.
Lazerson, Bingham McCutchen, East Palo Alto.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $2,340,700

Range: $2,000,000-4,999,999

$131,700 past economic loss; $87,000 future economic loss; $100,000 past non-
economic loss; $22,000 future non-economic loss; $2,000,000 punitive damages; plus
$1,059,351 attorney fees against defendant Bimbo Bakeries USA for **wrongful
termination**, failure to prevent discrimination, and failure to **accommodate**. The
jury did not find in favor of plaintiff on her retaliation claim. The court awarded
"lodestar" fees in the amount of $706,234, but found that a multiplier of 1.5 was
warranted in the case. The court granted defendants Torrise, Thompson-McCann, and
Perez's motion for summary judgment and dismissed plaintiff's claims against them.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Trial Type: Jury
Trial Length: Not reported.
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:
Plaintiff: Not reported.
Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Plaintiff: Plaintiff Yaire Lopez was employed by defendant Bimbo
Bakeries USA Inc. for five years. For the first two years, plaintiff worked as a
clerk. For the next three years, plaintiff worked as a delivery driver, loading and
unloading the truck and making deliveries. Plaintiff's salary was $520 per week,
plus overtime and commissions. Plaintiff reported to defendant John Perez.
On February 4, 2005, plaintiff told defendant Perez that she was two months
pregnant and gave him a doctor's release stating that she had certain restrictions,
including the inability to lift more than 20 pounds and the inability to climb. The
doctor's release also stated that plaintiff would need a 15-20 minute break every
two hours.
Plaintiff alleged that one hour after plaintiff gave defendant Perez the release,
defendant Perez told her to go home because defendant Bimbo Bakeries USA could not
provide any work to the complainant with those restrictions. Plaintiff said
defendant Bimbo Bakeries USA had previously made accommodations for other truck
drivers with disabilities.
Plaintiff claimed that she received a medical leave packet from defendant Bimbo
Bakeries USA and took the packet to her doctor, who advised her to file for
unemployment insurance with the understanding plaintiff had been terminated.
Plaintiff called defendant Laura Thompson-McCann to request a position at defendant
Bimbo Bakeries USA's thrift store, but said defendant Thompson-McCann never
returned her calls. She said defendant Bimbo Bakeries USA sent her a letter stating
that she was on medical leave and would be terminated if she did not respond within
48 hours. Plaintiff said she left a message on defendant Thompson-McCann's voice-
mail, but never received a return phone call. On May 23, 2005, plaintiff learned
defendant Bimbo Bakeries USA terminated her on April 4, 2005.
Plaintiff alleged termination because of pregnancy, failure to accommodate
conditions related to pregnancy, gender harassment, retaliation, unlawful denial of
leave pursuant to the California Family Rights Act, failure to prevent
discrimination, wrongful termination, and intentional infliction of emotional
distress.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.

CLAIMED DAMAGES
According to Plaintiff: Not reported.

SETTLEMENT DISCUSSIONS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

According to Plaintiff: Not reported.

COMMENTS
According to Plaintiff: The complaint was filed on September 22, 2005.
E. Joseph Connaughton and Melissa Listug Klick represented defendants Bimbo
Bakeries USA at trial and represented defendants Torrise, Thompson-McCann, and
Perez until they were dismissed from the case. Wendy M. Lazerson represented
defendant Bimbo Bakeries USA.

Trials Digest, A Thomson/West business

San Francisco County Superior Court

49 Trials Digest 10th 7 (Cal.Superior), 2007 WL 4339112

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 of 31 DOCUMENTS

Copyright 2007 LexisNexis, Division of Reed Elsevier Inc.
LexisNexis Jury Verdicts and Settlements Report

*2007 Mealey's CA Jury Verdicts & Settlements 2545*

**HEADLINE:** California Jury Issues $3.75 Million Verdict To Firefighter In Employment Discrimination, Retaliation Case

**Case Name:** Frank Lima v. City of Los Angeles

**Case Number:** BC353261

**Court:** Calif. Super., Los Angeles Co.

**Judge:** Tricia A. Bigelow

**Verdict/Settlement (breakdown):** $3.75 million plaintiff verdict ($790,000 for future economic loss, $2 million for past noneconomic loss, and $960,000 for future noneconomic loss)

**Plaintiff(s):** Frank Lima

**Defendant(s):** City of Los Angeles

**Date:** Aug. 9, 2007

**Claim:** Violations of the California Fair Employment and Housing Act and retaliation in violation of the California Fair Employment and Housing Act

**Background:** Frank Lima began working for the City of Los Angeles in 1992 as a firefighter. In 2001, Lima said, he was promoted to fire captain. Lima alleges that he was subjected to harassment and discrimination based upon his gender and sex.Specifically, Lima said that he was instructed to treat female employees differently but that he refused. As a result of his refusal to give women workers preferential treatment, Lima said, he was retaliated against.Lima sued the city on May 31, 2006, in the Los Angeles County Superior Court.

**Other:** The case went to a jury trial on May 22, 2007, before Judge Tricia A. Bigelow.The jury found that Lima did oppose giving preferential treatment to female firefighters and that he was reprimanded, denied a position and received a 30-day suspension. The jury also found that Lima was treated differently regarding his time off and in the city's decision during a response call to a tanker fire.The jury also found that Lima's opposition to giving females preferential treatment was the motivating reason for the city's treatment of Lima.The jury awarded Lima $790,000 for future economic loss, $2 million for past noneconomic loss and $960,000 for future noneconomic loss.

**Plaintiff Attorneys:** Gregory W. Smith and Jason M. Wymond, Law Offices of Gregory W. Smith, Beverly Hills, Calif.

**Defense Attorneys:** Rockard J. Delgadillo, city attorney, Michael L. Claessens, senior assistant city attorney, Angel Manzano Jr., deputy city attorney, Deborah Breithaupt, deputy city attorney, all in Los Angeles.

**Key Related Documents:** Complaint available.  Document #99-070914-001C. Judgment available.  Document #99-070914-002R.

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews. To see if there is a Mealey's conference on this topic or an online CLE session, please visit: http://www.mealeys.com/conferences.html.

**LOAD-DATE:** 10/15/2007

Westlaw.

6 Trials Digest 9th 13                                                Page 1

6 Trials Digest 9th 13 (Cal.Superior), 2006 WL 397031

Copyright (c) 2008 Thomson/West

Superior Court, Santa Barbara County, California.

Wysinger vs. Automobile Club of Southern California

TOPIC:
Synopsis: District manager claims age and **disability** discrimination by employer
Case Type: Labor & **Employment**; **Discrimination**; Labor & Employment;
**Disability**/Medical Condition; Labor & Employment; Harassment; Labor & Employment;
Retaliation; Intentional Torts; Infliction of **Emotional Distress**

DOCKET NUMBER: 1132996

STATE: California
COUNTY: Santa Barbara

Verdict/Judgment Date: January 6, 2006

JUDGE: Denise deBellefeuille

ATTORNEYS:
Plaintiff: Virginia Keeny, Hadsell & Stormer, Pasadena.; Dan Stormer, Hadsell &
Stormer, Pasadena.
Defendant: Jeffrey Dinkin, Sheppard, Mullin, Santa Barbara.; Deborah Martin,
Sheppard Mullin, Santa Barbara.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $1,284,000

Range: $1,000,000-$1,999,999

 By a vote of 10 to 2 the jury awarded plaintiff $284,000 in compensatory damages
for the causes of action for retaliation and failure to engage in the interactive
process, (having returned a special verdict of no liability on the causes of action
for age discrimination, **disability** discrimination, and failure to **accommodate**), and
by a vote of 9 to 3 the jury awarded plaintiff $1 million in punitive damages.
Trial Type: Jury
Trial Length: 1 month.
Deliberations: 3 days.
Jury Poll: Mixed poll.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXPERTS:
Plaintiff: <u>Alan Karbelnig</u> Ph.D., psychologist, South Pasadena, (626) 441-7778.;
<u>Stephanie Rizzardi-Pearson</u>, economist, Rizzardi-Pearson Associates, San Marino,
(626) 457-6297.;  <u>David Wallace</u> M.D., rheumatologist.
Defendant: <u>David N. Glaser</u> M.D., forensic psychiatrist, Glaser Forensic Group,
Encino, (818) 382-9920.;  <u>Orrin Troum</u> M.D., rheumatologist, Santa Monica, (310)
449-1999.


TEXT:
CASE INFORMATION
FACTS/CONTENTIONS


According to Plaintiff: Plaintiff Guy Wysinger, a 41-year district manager of
defendant Automobile Club of Southern California ('ACSC'), sought a transfer to an
office closer to his home due to his medical condition (rheumatoid arthritis,
lupus, etc.). Plaintiff claimed that the long commute exacerbated his physical
condition.
Plaintiff claimed that ACSC failed to provide him with required accommodation and
that the failure to place him in the Ventura position constituted discrimination
based on his age and disability, and retaliation based on plaintiff's having
previously filed an age discrimination claim with the EEOC.
ACSC denied the transfer request, contending that the position he sought was, in
fact, a promotion rather than a transfer, and that plaintiff was not the best
qualified candidate for that position. Defendant denied plaintiff's claims,
contending that it had legitimate, non-discriminatory reasons for its actions.
Plaintiff also sued for breach of the covenant of good faith and fair dealing based
on an alleged promise to move him to the Ventura office, harassment based on his
age and/or disability, failure to provide a workplace free of harassment and
discrimination, and intentional infliction of emotional distress, causes of action
which were dropped after the presentation of evidence but prior to instructing the
jury. While plaintiff had not pled a cause of action for failure to engage in the
interactive process required by the Fair Employment and Housing Act, an amendment
to add the claim was allowed after the presentation of evidence.


CLAIMED INJURIES
According to Plaintiff: Emotional distress.


CLAIMED DAMAGES
According to Plaintiff: Plaintiff claimed over $400,000 in lost wages and benefits,
plus additional damages for emotional distress.


SETTLEMENT DISCUSSIONS
According to Plaintiff: No significant discussions.


COMMENTS
According to Plaintiff: Plaintiff will be making a motion for fees and costs.
Motions for judgment notwithstanding the verdict and new trial are anticipated by
defendant. An appeal is likely.


Trials Digest, A Thomson/West business


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Santa Barbara County Superior Court/Central

6 Trials Digest 9th 13 (Cal.Superior), 2006 WL 397031

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

( 🔍 Search All Issues )  ( 📖 Contents )  ( ⬅ Back to Search Results )

**BNA, Inc.**

## Employment Discrimination
## Verdicts and Settlements

| | |
|---|---|
| **Case Cite:** | Wysinger v. Automobile Club of S. Calif., Cal. Ct. App., No. B191028, 11/29/07 |
| **Cause of Action:** | Disabilities |
| **Counsel:** | John K. Beckley<br>Jeffrey A. Dinkin<br>Margaret M. Grignon<br>Virginia Keeny<br>Deborah L. Martin<br>Dan Stormer<br>Nigel A. Whitehead |
| **Defendant:** | Automobile Club of Southern California |
| **Plaintiff:** | Guy Wysinger |
| **Tribunal:** | California Court of Appeal |
| **Presiding Judge:** | Paul H. Coffee<br>Arthur Gilbert<br>Steven Z. Perren |
| **Statute Cited:** | California's Fair Employment and Housing Act |
| **Verdict/Settlement :** | Verdict (11/29/2007) |
| **Award Amount $** | $2,260,000 |

## California
## Finding of Failure to Discuss Accommodation
## Not at Odds With Accommodation Claim Denial

A state jury's finding that an employer failed to engage in the interactive process required by state disability discrimination law was not inconsistent with its finding that the employer did not fail to accommodate an employee's disabilities, the California Court of Appeal ruled Nov. 29, rejecting other assertions of error and upholding a $2.26 million judgment (*Wysinger v. Automobile Club of S. Calif.*, Cal. Ct. App., No. B191028, 11/29/07).

Failing to engage in the interactive process for finding a reasonable accommodation for a disabled worker is a separate violation of California's Fair Employment and Housing Act "independent from an employer's failure to provide a reasonable disability accommodation, which is also a FEHA violation," Justice Arthur Gilbert noted. "Here the jury could find there was no failure to provide a required accommodation because the parties never reached the stage of deciding which accommodations were required. [Automobile Club of Southern California] prevented this from happening by its refusal to engage in the interactive process," he said.

Accordingly, Guy Wysinger, who sued after what he claimed was disability- and age-related mistreatment by ACSC--where he worked for 25 years--caused him to become depressed, was entitled to a jury's award of $284,000 in economic and noneconomic compensatory damages, the court said. He also could keep the jury's award of $1 million in punitive damages and the trial court's award of $978,791 in attorneys' fees, it added.

The court rejected the contention that the punitive damages award was not supported by evidence of malice, fraud, or oppression, citing proof that a supervisor, among other things, told Wysinger that the company was "going to crush" older managers like him who were opposed to a new compensation plan. "The jury could find that this callous and retaliatory conduct merits an award of punitive damages," it wrote.

**Denied Promotion**

A district manager for ACSC's Santa Barbara, Calif., office, Wysinger had lupus, a heart condition, and rheumatoid arthritis. He received favorable reviews during his tenure with the company.

In the late 1990s, ACSC decided to implement a new compensation plan but older office managers like Wysinger were opposed to it because they believed the plan would have a disproportionate impact on them. Robert Kane, the company's vice president of district office operations, called Wysinger into his office and told him, "[W]e are going to crush" the managers opposed to the plan and told Michael Coleman, another opponent of the plan, that "It doesn't matter what you did for this company in the last 30 ... years. None of that matters. And you can die at your desk. We'll replace you tomorrow. Nobody cares."

Claiming age discrimination, Wysinger filed a charge with the Equal Employment Opportunity Commission in 1999. ACSC never did impose the planned pay cuts but, according to Wysinger, his work environment changed as a result of his EEOC filing.

Specifically, he no longer was invited to join management committees or apply for management positions and was treated coldly or ignored at management meetings. His requests for accommodations for his disabilities also were ignored and he began to receive unfavorable job reviews, Wysinger alleged. In addition, the company transferred staff from his office, creating a hardship for him.

According to Wysinger, his arthritis was aggravated by his daily commute to Santa Barbara so he wanted to transfer to an office manager position in ACSC's Ventura, Calif., office--which he previously managed--because it would involve a less difficult commute and constitute a promotion. In 2002, the position came open and he applied. Although his immediate supervisor recommended him as the most qualified candidate, who ran an "elite" or extremely well-managed office, and Kane agreed, Wysinger did not get the job.

Instead, Kane met with a senior vice president, Peter McDonald, and ACSC decided to post the position to attract other applicants. McDonald later testified that "[W]e were ... trying to change the culture of the organization ... . We were actively trying to get people from other parts of the company to apply." Although several people applied, Kane recommended Grant Sigmund, an office manager who did not apply and allegedly did not run an "elite" office. McDonald approved the selection.

**Claims of Error Rejected**

Wysinger sued for age discrimination, retaliation, and disability discrimination under FEHA. He specifically claimed that ACSC failed both to engage in the required interactive process with him and to accommodate his disabilities.

At trial, Wysinger presented medical and other evidence of how he became depressed because of the way he was treated at ACSC, and economic evidence that, given his age and inability to work, he would sustain $280,129 in lost future earnings. The parties also presented evidence on punitive damages regarding ACSC's net worth of $353,791,000 but the trial court rejected other proof offered by the company on the issue.

The jury found that ACSC did not discriminate against Wysinger because of his age or physical disability, or fail to accommodate his physical disability. However, it concluded that the company retaliated against him for filing an age bias charge with EEOC and that it failed to engage in an interactive process in an attempt to find a reasonable accommodation for his disabilities. It awarded him $204,000 economic damages, $80,000 in noneconomic damages, and $1 million in punitive damages for ACSC's "malicious, oppressive, and/or fraudulent" conduct. The trial court refused ACSC's request to reduce the attorneys' fees award, ordered fees in the amount of $978,791, and entered judgment.

The company appealed, raising nine contentions of error. A unanimous panel rejected its arguments.

Sufficient proof supported the retaliation verdict, Gilbert said, noting that the denial of the Ventura job was an adverse act since a human resources manager testified that it would have been a promotion for Wysinger and Kane acknowledged that it involved a higher salary and management classification. And the refusal to accommodate Wysinger's disabilities and other misconduct in the time between his 1999 EEOC charge and the 2002-2003 promotion denial was a pattern of intervening conduct permitting a finding of a causal nexus between the protected activity and adverse action, he said. The instructions provided to the jury on the retaliation issue also were adequate, he added.

ACSC failed to substantiate its charge that the trial proof did not support the jury's damages on the interactive process claim because the compensatory award was not attributed between the retaliation and

disability bias findings, the court said. The company also did not show that the evidence of retaliatory conduct or the resulting damages was lacking, it added, rejecting the assertion that a form Wysinger filled out for ACSC's retirement department belied his claim that his depression rendered him unable to work.

**Verdicts Not Inconsistent**

In addition, Gilbert said, "the verdicts on the reasonable accommodations issue and the interactive process claim are not inconsistent. They involve separate causes of action and proof of different facts." The federal cases to the contrary cited by ACSC involved the Americans with Disabilities Act and were "inapposite," he wrote.

"Federal ADA cases are generally helpful in interpreting FEHA. But not where they undermine provisions of California law that provide more protections to employees than the ADA," the court said. "No provision in the ADA imposes liability on employers who refuse to engage in the interactive process. ... By contrast, FEHA allows an independent cause of action for employees whose employers fail to engage in the interactive process. This provision does not require proof of the elements required by the ADA," it ruled.

Not only was the punitive damages award supported by sufficient evidence of "callous and retaliatory conduct," it also was not constitutionally excessive or disproportionate to the underlying award, the court found. "The punitive award is less than four times greater than the compensatory award. This falls within the range of multipliers that are commonly used to achieve the goals of punitive damages," it wrote. ACSC did not support its charge that evidence relevant to punitive damages was improperly excluded, it added.

Finally, the court rejected the contention that the fees award should have been adjusted downward to reflect Wysinger less than complete success in the case. Of eight original causes of action, he prevailed only on his retaliation and interactive process claims, ACSC said.

"Here the court calculated the fees using the lodestar method. It said adjustments were made to the hours to account for inefficient or duplicative efforts. It determined the lodestar to be $889,810. It then elected to enhance the lodestar 'by an upward multiplier of 1.1,' for a total award of $978,791," Gilbert noted. That was proper under the controlling law, especially given the intertwining nature of employment discrimination claims, he said.

Justices Paul H. Coffee and Steven Z. Perren joined the opinion.

Virginia Keeny and Dan Stormer of Hadsell & Stormer in Pasadena, Calif., and Nigel A. Whitehead of Murray & Whitehead in Nipomo, Calif., represented Wysinger.

John K. Beckley of Costa Mesa, Calif., Jeffrey A. Dinkin and Deborah L. Martin of Sheppard, Mullin, Richter & Hampton in Santa Barbara, and Margaret M. Grignon of Reed Smith in Los Angeles represented ACSC.

*Full text of the opinion is available at http://op.bna.com/eg.nsf/r?Open=pdon-79ktyv.*

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1521-5288
Copyright © 2007, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V

 Contents    ⇐ Back to Search Results

Westlaw.

41 Trials Digest 8th 4                                                   Page 1

41 Trials Digest 8th 4 (Cal.Superior), 2005 WL 2899718
For Opinion See 2005 WL 4717666(Trial Order), 2005 WL 4717667(Trial Order)

Copyright (c) 2008 Thomson/West

Superior Court, San Francisco County, California.

Daniels vs. CVS Procare Pharmacy

TOPIC:
Synopsis: HIV-positive employee alleges discrimination, retaliation against
pharmacy
Case Type: **Employment; Discrimination;** Employment; Retaliation; Employment;
**Disability**/Medical Condition; Employment; Termination; Constructive Discharge

DOCKET NUMBER: SF0342755

STATE: California
COUNTY: San Francisco

Verdict/Judgment Date: April 29, 2005

JUDGE: A. James Robinson

ATTORNEYS:
Plaintiff: Laura Stevens, Law Offices of Laura Stevens, Oakland.;    Barry S.
Willdorf, Law Offices of Barry S. Willdorf, San Francisco.
Defendant: Patrick Mullin, Jackson Lewis, San Francisco.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $276,711

Range: $200,000-$499,999

 $62,111 past lost income; $66,600 future lost income; $148,000 **emotional distress;**
plus costs. The jury's votes varied from 12 to 0 to 9 to 3.
Trial Type: Jury
Trial Length: 17 days.
Deliberations: 9 hours.
Jury Poll: Mixed poll.

EXPERTS:
Plaintiff: Not reported.
Defendant: Not reported.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Plaintiff: Plaintiff Gregory Daniels, a 35-year-old store manager,
began working at defendant CVS Procare Pharmacy in San Francisco in April 2000.
Plaintiff was HIV-positive, and, in the spring of 2003, began experiencing
excessive fatigue and illness. His doctors told him to reduce his workload, and, on
April 15, he sent a memo to his supervisors, stating his need to work fewer hours.
Plaintiff told defendant he had to cut back on his hours and wanted to maintain his
health benefits.
On May 19, the defendant told plaintiff that he couldn't work a reduced schedule.
Plaintiff tried to work this out. By early June plaintiff still had not heard from
defendant, who continued to deny him the reduced hours. Plaintiff resigned on June
5. Plaintiff alleged that his bosses had always known that he was HIV-positive, but
it wasn't until he wanted a reduced schedule that they started imposing hardships.
Defendant's failure to reasonably respond to his request to work fewer hours, to
engage in good faith and in a timely interactive process, as well as telling him he
couldn't take time off from work for doctor visits, were retaliatory actions that
forced him to quit.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.

CLAIMED DAMAGES
According to Plaintiff: Plaintiff did not give the jury a specific amount, but
suggested 5-6 times wage loss.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: Plaintiff initially offered to settle for $47,000
in mediation. Offer: Defendant never offered more than $25,000 firm, but indicated
near trial that it would settle for less than $100,000, including attorney fees and
costs.

COMMENTS
According to Plaintiff: Attorney fees motion is pending. Laura Stevens provided the
information for this report.

Trials Digest, A Thomson/West business

San Francisco County Superior Court

41 Trials Digest 8th 4 (Cal.Superior), 2005 WL 2899718

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2 of 31 DOCUMENTS

Copyright 2004 Jury Verdict Review Publications, Inc.
National Jury Verdict Review & Analysis

VELEZ vs. ROCHE

Case No. 02-00337 EMC

**Verdict Date:** February 4, 2004;

**Publication Date:** February, 2004

**Topic:** TITLE VII VIOLATION - EMPLOYMENT DISCRIMINATION - EMOTIONAL DIS-
TRESS - FEMALE CIVILIAN SURGEON SEXUALLY HARASSED AND SINGLED OUT
WHILE WORKING AT THE UNITED STATES AIR FORCE VETERAN'S CENTER AT
TRAVIS AIR FORCE BASE

**Result:** $ 505,623 Verdict

**Title:** Additional Verdicts of Particular Interest; Employment Discrimination

**State:** California

**Court:** U.S. District Court, Northern California District

**Judge:** Edward M. Chen

**Plaintiff Attorney:** Jack Lee of Minami Lew & Tamaki in San Francisco, Ca.

**Defendant Attorney:** Claire T. Cormier of the United States Attorney's Office in San Jose, Ca.

**Facts:** PLAINTIFF'S CAUSE
The female plaintiff surgeon contended that she was discriminated against and subjected to emo-
tional distress while employed at the defendant's facility. The plaintiff maintained that the military
doctors made sexual jokes and crude remarks in the plaintiff's presence. The sexist comments
ranged from lewd comments and jokes about female patients to disparaging remarks about the abili-
ties of female surgeons. The plaintiff claimed employment discrimination and sought damages for
emotional distress.
The evidence revealed that the plaintiff, a civilian female surgeon, was employed to work at Travis
Air Force base in 1993. The plaintiff, who was 35 years old at the time of the incident, was the Act-
ing Chief of Surgery for Veteran's Health Care System in Northern California. She was assigned to
work part-time at the David Grant Medical Center after the veterans' hospital in Martinez where she
had been working at was closed for earthquake repairs. She was the only civilian among three mili-

© 2004 Jury Verdict Review Publications, Inc.,National Jury Verdict Review & Analysis

tary doctors and the only female surgeon when she was initially hired. During her tenure there, she alleged that she was singled out and criticized. She was subject to three performance reviews during a 60-day period in 1995. The first performance review found nothing wrong with her work. The second review, conducted only a few days following the first, criticized her performance and suspended her medical privileges. Other male surgeons with more serious complications in their operations were not reviewed, nor were their surgical privileges threatened. One male physician was also investigated, but he was soon allowed to resume his medical practice without restriction within a week.

Dr. Velez was forced to endure an intensive 31-day case review and a 31-day loss of operating privileges. The second review occurred while Dr. Velez was on maternity leave. The reviews, conducted by male Air Force physicians, were conducted without Dr. Velez's involvement, denying her the opportunity to respond to the findings. The second review led to a Dr. Velez's temporary suspension of her operating privileges, jeopardizing her medical license. The temporary suspension happened while Dr. Velez was in the middle of her maternity leave and was not operating.

A third performance review which was conducted by non-military personnel restored the plaintiff's medical privileges. The suspension, however, remained on the plaintiff's record and has to be reported by her during every job application.

DEFENDANT'S CONTENTIONS

The defendant denied the allegations and maintained that there was no sexual discrimination against the plaintiff. The jury unanimously determined that the plaintiff was sexually discriminated against and subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964. The jury awarded the plaintiff the sum of $ 505,623 in damages for emotional distress for an eighteen month period.

**Plaintiff Experts:** Standard of Care in Investigations: Amy Oppenheimer from Berkeley, Ca.
Economics: Margo Ogus from Mountainview, Ca.
Physician Placement: Regina Levison from El Dorado Hills, Ca.

**Issue:** Published in Volume 19, Issue 2